MASSENBURG *et al. vs.* THE GRAND LODGE F. & A. M. OF THE
STATE OF GEORGIA.

1. Conceding that the Grand Lodge of Georgia is an institution of purely public charity, within the meaning of the constitution, its temple or lodge building, when used for corporate profit or income, is not exempt from taxation.
2. The most that the corporation can claim is, that the comparative value of the part used for income, and the part not so used, may be distinguished in making its tax returns, and that the latter part, by due apportionment of value, shall be spared from taxation.

June 1, 1888.

Tax.   Charities.   Constitutional law.   Before Judge
GUSTIN.   Bibb superior court.   May term, 1888.

The Grand Lodge of Free and Accepted Masons for the State of Georgia (a corporation duly incorporated under the laws of Georgia) filed its petition against C. B. Massenburg, tax-collector of Bibb county, and W. H. O'Pry, deputy-sheriff of said county, alleging that said Massenberg, claiming to do so by virtue of the fact that he is such tax-collector, had, without authority of the law, issued a tax *fi. fa.* for State and county taxes for the year 1887, against the property of complainant, for $150.00, and that O'Pry, as deputy-sheriff, had without authority of law levied it on the building on Mulberry street in the city of Macon, known as the "Masonic Lodge building," and would proceed to sell the same unless restrained. The petition prayed that defendants be restrained from proceeding further in levying, advertising and in selling said property; and that the court would adjudge that said property was not subject to taxation, for reasons which sufficiently appear in the affidavit, to be first hereafter mentioned.

On the hearing before the judge, complainant read the bill and its exhibits (which were copies of the exe-

cution and levy). Also affidavit of C. E. Danmour and A. M. Wolihin, to the effect following: Deponents are grand treasurer and grand secretary of complainant. Said complainant is an institution of purely public charity. The building sought to be taxed was built solely for the purpose of carrying out the objects of said institution, the same being those of public charity, to wit: for the alleviation of human suffering and distress. Said building is used for no other purpose. Complainant does not use the same for the purposes of private or corporate profit or income, but this and all other masonic institutions are organized purely for charitable purposes, their object being to do good and relieve distress. All moneys received by complainant are used for the same purpose. There is a balance due upon the building of $4,500, the same being for a debt contracted to complete it. There is not now on hand enough money to pay the outstanding debts or necessary expenses, and there is no fund on hand to be appropriated to the payment of any part of the indebtedness incurred in the construction of the building. Said property has never before been taxed by the city, county or State; it has heretofore been recognized as exempt from all taxation, as the objects and purposes were recognized as those of an institution of purely public charity.

Complainants closed and defendants read in evidence the following agreement, signed by complainant's counsel: It is admitted that complainant rents the lower story of the building sought to be taxed, each year, as stores and derives a yearly rent from said stores; that said lower story is rented out for this year and has been for several years past, the annual rental derived by complainant from said lower story exceeding the sum of $500.00. All moneys so received are applied exclusively to charitable purposes, and complainant does not derive any private profit from the same.

The judge then passed an order restraining defendants as prayed. Defendants except, and say that the judge erred: (1) in granting a restraining order against defendants as prayed for by complainant; (2) in making the order and judgment aforesaid; (3) in holding that the property was and is exempt from payment of the *fi. fa.*, and is not subject to taxation by the State or by the county; and in restraining defendants from further proceeding.

CLIFFORD ANDERSON, attorney-general, for plaintiffs in error.

JOHN S. DAVIDSON and BACON & RUTHERFORD, *contra.*

BLECKLEY, Chief Justice.

Certain official masons and their associate members, present and future, were incorporated in 1796, by the name of the Grand Lodge of Georgia, to the end that charitable institutions might be promoted, and a society that had existed time immemorial might be secured in their rights and privileges, the declared principles of the order being charity and universal benevolence. The charter gave the corporation " full power and authority to take, hold and enjoy real and personal property . . and also to receive and apply bequests or donations as may be made to and for the uses and purposes intended by the said institution." Mar. & Craw. Dig. 147. Nothing appears in the charter upon the subject of taxation. By section 798 of the code of 1873, " any house belonging to any charitable institution," and also all stocks owned by charitable institutions for the legitimate purposes of such, were exempted from taxation. Whilst this section was in force the case of *The Mayor vs. Solomon's Lodge*, 53 *Ga.* 93, arose and

was decided, the court holding that Solomon's Lodge, also a masonic corporation, was a charitable institution, and that a house belonging to it, *any house,* was exempt. This decision was made in 1874. In 1877, the present constitution of the State was adopted. It strictly limits (code of 1882, §§5181, 5182, 5184,) the former discretionary power of the legislature to classify property as exempt and non-exempt. Section 5181, "All taxation shall be uniform upon the same class of subjects, and *ad valorem* on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Section 5182, "The General Assembly may, by law, exempt from taxation all public property; places of religious worship or burial; all institutions of purely public charity; all buildings erected for and used as a college, incorporated academy, or other seminary of learning; the real and personal estate of any public library, and that of any other literary association used by or connected with such library; all books and philosophical apparatus, and all paintings and statuary of any company or association, kept in a public hall and not held as merchandise or for purposes of sale or gain : *Provided,* the property so exempted be not used for purposes of private or corporate profit or income." Section 5184, "All laws exempting property from taxation, other than the property herein enumerated, shall be void." In 1878, (code of 1882, §798,) the General Assembly exercised, in its full extent, the power conferred upon it to grant exemption ; in so doing, after the words "the following described property shall be exempt from taxation, to wit," using the exact language of the constitution, "all institutions of purely public charity" being amongst the terms of description or enumeration. In *Trustees vs. Bohler* (last term), 80 *Ga.* 159, this court

construed the exemption as applied to a devise of real estate in trust to appropriate the annual product to the erection of a poor-house, and the support of its inmates, holding that exemption depends upon the use made of the property, not of the income, and that the devised realty was not exempt.

The present case differs from that in several particulars. In that the charity was not masonic; here it is: in that the institution as a physical entity was prospective only; here it is in actual, corporeal existence; there the property taxed was never to be used directly and immediately for the charitable object, but only the produce or income derived from it was to be devoted to that object; here the property taxed is the temple or lodge-building of the charitable order or society—the domicile, habitation, seat and external symbol of the organization, the upper story of the building being occupied and used as its "lodge," and lower story rented out as stores, producing an income which is applied exclusively to charitable purposes, and from which the incorporated society derives no private profit.

1. Abiding by the construction put upon the constitution, and the act of 1878, in *Trustees vs. Bohler*, the question is, whether the differences in the facts which we have just indicated are of such a nature as to hinder the principle of that case from applying to this. Though masonic charity is widely extensively and highly beneficent, it is certainly not more "purely public" than an almshouse. Indeed, it has been matter of grave judicial discussion whether masonic institutions, or others which confine their benefits to members of the given association, are institutions of purely or even of public charity at all. Swift *vs.* Easton, 73 Pa. St. 362, Donohugh's Appeal, 86 *Ib.* 306; Burd Orphan Asylum *vs.* School District, 90 *Ib.* 21; Deleware Co. Institute *vs.*

Delaware Co., 94 *Ib.* 163 ; Thiel College *vs.* Mercer Co., 101 *Ib.* 530 ; Gerke *vs.* Purcell, 25 Ohio St. 229 ; Humphries *vs.* Little Sisters, 29 *Ib.* 201 ; Library Association *vs.* Pelton, 36 *Ib.* 258; Bangor *vs.* Masonic Lodge, 73 Me. 428. There is no occasion now to declare for the one side or the other of this nice question, but we may and do concede the purely public character of the charity which the Grand Lodge of Georgia administers, since its legislative charter recognizes it as an organ of charity and universal benevolence.

The difference between an existing and a mere prospective or possible institution is certainly important, and would serve to distinguish the present from the former case in many respects, but not with regard to the discrimination between *corpus* and income, which the decision in that case recognizes. It is also an important difference that the property taxed in that case was " outlying," not the contemplated institution, nor a part of it, nor ever to become a part of it; but this element likewise leaves the discrimination between *corpus* and income untouched. We held that exemption depends upon the use made of the property, not upon the use made of the income. To devote income to the erection and support of an almshouse is to use it for a purpose purely charitable, as purely charitable, in a legal sense, as to disburse it through the Grand Lodge of Georgia for any object within the range of universal benevolence. We arrive at the conclusion that the property itself, claimed to be exempt, must be used directly and immediately for the charitable object, not from any express declaration to that effect in the constitution or the statute, for there is none, but from the negative contained in the proviso upon use for private or corporate profit or income. Interpreting " private or corporate income " to mean

any income which is not public, we consider that pro-ductive property used as capital to raise money to expend in charity is used for private income when the owner is a private individual, and for corporate income when the owner is a corporation. It is no more allowable, under the constitution, for a charitable association to accumulate money by the use of exempt property to be disbursed in charity than it is for a common citizen to do it. For A or B it is no answer to the tax-collector to say, "This part of my property is rented out to produce my charity fund, and has been for the last ten years; every cent derived from it is given to the poor and needy, and I never considered or used any portion of it as profit or income." Neither can such an answer be accepted from any charitable organization whatsoever. In so far as such organizations are administrators and disbursers of purely public charity, their property permanently in use for that purpose is exempt from taxation; but in so far as they are capitalists or proprietors engaged in acquiring money or effects to be so disbursed, property of any and every kind from which their income is derived is subject to be taxed the same as property generally. The constitution intends no favor to the money-making function of charitable institutions, but to the spending or dispensing function alone. When the two functions co-operate in the use of the same property or of different parts of the same building, as in this case, the strict letter of the constitution would deny exemption to the whole; for the language is, "*Provided*, the property so exempted be not used for purposes of private or corporate profit or income." Wyman *vs.* St. Louis, 17 Mo. 335. But the general tenor of authority seems to be that in such instances, though the property is taxable, there may be a due apportionment of values in the

assessment, so as to confine the exemption to so much of the value as the privileged part of the premises represents.    State *vs.* Board of Assessors, 34 La. An. 574; Appeal Tax Court *vs.* Grand Lodge, 50 Md. 421; County Comm'rs *vs.* Sisters of Charity, 48 Md. 34; State *vs.* Elizabeth, 4 Dutcher, 103; Cin. College *vs.* The State, 19 Ohio, 110; Library Association *vs.* Pelton, 36 Ohio St. 258; Detroit *vs.* Mayor etc., 3 Mich. 172; St. Joseph's Church *vs.* Assessors, 12 R. I. 19.

Constitutions which exempt or provide for exempting "institutions of purely public charity" are, of Ohio (1851), Pennsylvania (1873), and Louisiana (1879). Alabama (1875) specifies "institutions or enterprises devoted exclusively to charitable purposes"; Arkansas (1874) specifies "buildings and grounds and materials used exclusively for public charity"; Colorado (1876) specifies "lots with the buildings thereon, if said buildings are used for strictly charitable purposes"; Kansas (1859), Illinois (1870) and Nebraska (1875) each has "property used exclusively for charitable purposes"; Missouri (1875) specifies lots in certain localities and buildings thereon "when the same are used exclusively for purposes purely charitable"; Tennessee (1870) has "property held and used exclusively for purposes purely charitable"; Virginia (1870), "property used exclusively for charitable purposes"; West Virginia (1872), the same, omitting the word "exclusively."

Louisiana has the same proviso as to use which we have, except that "or leased" is added after the word "used."    Ohio had, by statute, as far back as 1845 the restrictive words, "not leased or otherwise used with a view to profit"; but these words were not inserted in the constitution.

The more one investigates the constitutions, statutes and reports of the several States, the more will he be

impressed with the tendency to narrow the range of exemption from taxation, and to lay stress on the open, visible and direct use of property as a test of its exemption in the interest of charity. The distinction between the acquiring and the dispensing functions of charitable organizations has been constantly felt, though not perhaps often formulated in words ; and that distinction is the key to the policy which puts productive property, when held for charity, on a different footing from nonproductive. The acquiring of money by the use of property or capital is not the appropriate office of a charitable agency, but rather to apply and administer that which has been accumulated through its own bounty or the bounty of others. It is not an instrumentality for gathering together, but for scattering abroad. When charity has a business side, let it conduct business as the world generally, on business principles, the first rule of which is to provide for taxes the highest claim on every species of property employed in the common avocations of life. There appears to us no reason why stores belonging to the grand lodge, rented out by it to merchants or shop-keepers, and thus put in competition with other like realty in the city of Macon, should not be taxed, irrespective of whether the "lodge" of the order is in the same building, and whether the proceeds of the renting have been or are to be applied to one purpose or another.

2. It results from what we have said that the most the grand lodge could rightfully claim was to have the rule of apportionment which we have indicated recognized and applied in making its returns for taxation. But the record before us gives no information and furnishes no *data* on that subject as to the taxes of 1887, those in question; and so we can but reverse generally the judgment granting the injunction, and re-open the

way for the ministerial officers of the State and county
to do their duty.

Judgment reversed.