MUNDY, sheriff, *et al. v.* VAN HOOSE *et al.*

1. "Buildings erected for and used as a college, incorporated academy, or other seminary of learning," are not, under the constitution and laws of this State, exempt from taxation, if "used for purposes of private or corporate profit or income."

2. It follows that grounds, buildings, and other property occupied and used by the owner or owners thereof for conducting a college or school, for attendance upon which charges for board and tuition are made, are subject to taxation.

Argued February 14, — Decided May 24, 1898.

Injunction. Before Judge Kimsey. Hall county. September 1, 1897.

*W. L. Telford* and *W. F. Findley*, for plaintiffs in error.
*J. B. Estes, Howard Thompson* and *H. H. Perry*, contra.

LITTLE, J.  The tax-collector of Hall county issued executions against the Georgia Female Seminary for taxes assessed against that institution for the years 1895 and 1896, and the executions were levied by the sheriff of Hall county upon the property of that institution; whereupon the plaintiffs, alleging themselves to be the owners of the property, filed a petition to enjoin the tax-collector and the sheriff from enforcing the collection of such executions, on the ground that the property, under the constitution and laws of this State, was exempt from taxation.   In the petition it was alleged, that the property consisted of seven acres, more or less, of land, two buildings situated thereon, used as a college or seminary for the education of girls; that one of such buildings was used exclusively for schoolrooms and the other partly for schoolrooms and partly as a dormitory for girls attending the seminary and for the teachers engaged in the school, and the remaining portion of the land used exclusively for a yard and grounds connected with the buildings; that the whole of the property was used exclusively for a college or seminary, and not for purposes of private or corporate profit or income; that the property was reasonably worth about $22,000, and that it had been assessed at a much higher value, a much larger amount than the true value of the property; that the property had been advertised for sale, under these executions; that such executions were not a lien upon

the property; and that if such sale should take place, it would cast a cloud upon the title of their property, thus involving petitioners in litigation with the purchaser and entailing irreparable damage upon them.   Upon the allegations and prayer of this petition a temporary restraining order was granted, and on a hearing thereof, after answer filed by the defendants, a temporary injunction was granted.   In the answer filed by the defendants it was averred that the entire property was used, during the years for which taxes were assessed, for the private profit and income of the plaintiffs, who were the owners of the property; and that although during those years the property may have been used in part for a school or college, yet the purpose and object of the plaintiffs in so using said property was for their own private gain.   It was further averred that the valuation at which the property was assessed was reasonable and just; also that the executions issued were a valid subsisting lien upon the property under the laws of this State, and should therefore proceed for the collection thereof.

In an amendment to the original petition, the plaintiffs admitted, among other things, that during the years for which the taxes were assessed, they with their families resided in one of the buildings on said property, in order that they might properly conduct the school, control the girls, superintend their behavior and properly instruct and guide them in their deportment, and at all times be in direct communication with the pupils; and that while so residing, they were exclusively engaged in their profession as teachers.   They also admit that they have conducted a school on said property, and that the pupils have paid tuition fees and board; but deny that the institution was run in competition with other boarding-houses. They also allege that during such years the school was run as, and was, a college, as appears from catalogues of said college, which truly represent the course of study which was pursued in the college, and that the college was carried on by them under the direct authority, control, and supervision of the trustees of the Georgia Baptist Seminary, under a charter of the State of Georgia; that the institution is public to all young ladies in the State who wish to attend, and no pupil has ever been refused

admission for inability to pay, and many are constantly instructed absolutely free.  They admit that entertainments have been given in the college and that an admission fee has been charged, but aver that they have given many musical and literary entertainments in said college which were absolutely free to the public; that three or four times as many entertainments are given free as are charged for; that when admission fees are charged, it is not for the purpose of income or profit or gain, but to defray the expenses of the same, and that all they have received would but pay the expenses attendant upon the same; that it is a part of the course of instruction to have entertainments, concerts, recitals, in many of which the pupils take part as beneficial to them in many respects, and the admission fees sometimes charged are on such occasions merely incidental to the carrying on of the school, and frequently an admission fee is charged for the sole purpose of discouraging the attendance of a certain disorderly element which sometimes interferes with the good order of such occasions; that other lectures, concerts, recitals, etc., are given that the pupils may have the benefit derived from attending the same, and are a usual and legitimate incident connected with the conduct of such an institution.   They deny that they received any income or profit from the cultivation of the land or rent of a tenant-house on the premises.   They admit that a small cottage was situated on the premises, but deny that they received or derived any income or rent from the same, averring that it was occupied either by a portion of the family of one of plaintiffs or one of the faculty without rent or any remuneration whatever, it being necessary to so use the same on account of the college building being at the time entirely taken up for recitation-rooms or rooms for the pupils and teachers; that at present both plaintiffs have residences on other property immediately adjoining, but not on the property, and by reason of having additional assistance in the control and government of the institution and by reason of the immediate proximity of their dwellings, they are now enabled, with the assistance of the other members of the faculty who occupy apartments in the college with the pupils, to properly superintend the same; that the property was

not during those years in any way used for the purpose of private or corporate income or gain or profit; that plaintiffs were the teachers in the school, conducting the same under the authority and control of the trustees of the Georgia Baptist Seminary; that plaintiffs received no rent or profit or income from the property during those years; that they are both teachers by profession, and that their purpose in owning and improving the property was and is to provide a plan and necessary accommodation for conducting their business and carrying out the objects of the institute, which are purely educational; that the only income or profit of any kind derived by them during those years or at present, in connection with the institution, is what they receive by authority of the trustees as remuneration for their service and labor as presidents and teachers, and amounts to far less than they could easily command as teachers in other institutions without any expenditure of their own means; that in their devotion to their profession and to the prosperity of the institution and to the cause of education, they have, out of their private means derived from private resources, expended upon the institution in fitting, preparing, and erecting suitable buildings for the instruction of the girls of this country, many times more than the amounts they have ever received for their services, or can ever hope to receive in the future; that the property could never be, without almost a sacrifice of the entire value, used for any purpose save that of education, and plaintiffs' expenditures have been a dedication of their private means to the cause of education, and not a financial investment.

In support of the contentions of the respective parties many affidavits were introduced; but it is not deemed necessary here to set out the contents of such affidavits, our conclusions and the judgment which we render being based upon facts as to which there is no dispute. The trial judge held that the property was exempt from taxation, and that the executions could not lawfully proceed; and the sheriff and tax-collector excepted. Counsel for defendants in error here waived the point that the executions could not legally proceed, because issued against the property instead of being issued against the owners; and therefore the sole question to be determined is,

whether, under the uncontroverted facts of this case, the property was, within the meaning of the constitution and laws of this State, exempt from taxation.

Two cardinal principles, the one in reference to the right, the other concerning the manner of the exercise of the power, govern legislative action in relation to taxation. It is declared by our constitution that: "The right of taxation is a sovereign right, inalienable, indestructible, is the life of the State, and rightfully belongs to the people in all republican governments, and neither the General Assembly, nor any nor all other departments of the government . . shall ever have the authority to irrevocably give, grant, limit, or restrain this right." Par. 1, sec. 1, art. 4, Constitution of 1877. "All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Par. 1, sec. 2, art. 7, Constitution of 1877. While thus recognizing the eminently sound doctrine that the General Assembly shall not divest the State of the power of exercising the right of taxation, and that such right shall be so exercised as to distribute this burden in a manner perfectly just, the framers of the constitution, looking to the advancement of all the people of the State, in religion, education, and works of charity, saw fit to relieve property which directly, and without question of pecuniary gain, contributed to these results from the burdens of taxation; but in order that the privilege should be confined alone to subjects which accomplished these objects, they declared that: "All laws exempting property from taxation, other than the property" enumerated in the constitution, "shall be void." Par. 4, sec. 2, art. 7, Constitution of 1877. It is the chief duty of government to afford protection to the person and property of the citizen, and the reciprocal duty of the citizen to bear a fair ratable proportion of the expenses incurred in affording such protection. So far as the personal tax is concerned, that is, when imposed, equal by our law on each individual citizen ; and as to tax on property, that is, as we have seen, ad valorem, and uniform on the same class of subjects. So that as a rule one individual pays an equal in-

dividual tax with another, while property pays for its protection on the basis of value, thus making a just, fair, and equal distribution of the burdens which civilization as represented by the government demands from those sharing its benefits, and as their respective contributions to maintain its beneficent effects. Taxation, therefore, is the rule, and exemption from taxation the exception. 1 Burroughs on Taxation, § 70; Cooley on Taxation (2d ed.), 204; *Athens City Waterworks Co.* v. *Mayor etc. of Athens,* 74 *Ga.* 413. And exemptions are made, not to favor the individual owners of property, but in the advancement of the interests of the whole people. Exemption, being the exception to the general rule, is not favored; but every exemption, to be valid, must be expressed in clear and unambiguous terms, and, when found to exist, the enactment by which it is given will not be enlarged by construction, but, on the contrary, will be strictly construed. Cooley on Taxation (2d ed.), 204, 205; *Atlanta Street Railroad Co.* v. *City of Atlanta,* 66 *Ga.* 104. Under the constitution of this State, no property except that specifically mentioned therein can be exempted from taxation. *Athens City Waterworks Co.* v. *Athens,* 74 *Ga.* 413.

So strictly shall laws creating such exemptions be construed, that, where places of religious worship are exempted, such exemption does not embrace a parsonage belonging to a church in which the pastor or rector resides, such parsonage not being a place of religious worship within the language of the exemption. *Wardens etc. of St. Mark's Church* v. *Mayor etc. of Brunswick,* 78 *Ga.* 541. Under an exemption from taxation of institutions of public charity, lands held in trust to appropriate the annual product to the erection of a poorhouse and the support of its inmates forever, are not exempt. *Trustees of the Academy of Richmond County* v. *Bohler,* 80 *Ga.* 159. Chief Justice Bleckley, in delivering the opinion in that case and following the rules which must apply to render property exempt from taxation, says: "Though a place of religious worship or a charitable institution may be exempted, a fund raised or set apart with which to build either, does not fall within the exemption. . . Property used to produce income to be expended in charity is too remote from the ultimate charitable object to

be exempt. If property is allowed to be used as taxed property, it also is to be taxed. If it competes in the common business and occupations of life with the property of other owners, it must bear the tax which theirs bears. Thus, if even a synagogue or a church were rented out during the week for a storeroom or a shop, though divine service might be performed in it on Saturday or Sunday, and though the rents were all appropriated to religious or charitable uses, its exemption would be lost." Where part of a building owned and used by a masonic lodge was rented out for store purposes, the part so rented does not come within the exemption in which the remainder of the building is placed, although the proceeds of rent are applied to the charitable objects of the institution. This court, in the case of *Massenburg* v. *Grand Lodge*, 81 *Ga.* 212, says: "In so far as such organizations are administrators and disbursers of purely public charity, their property permanently in use for that purpose is exempt from taxation; but in so far as they are capitalists or proprietors engaged in acquiring money or effects to be so disbursed, property of any and every kind from which their income is derived is subject to be taxed the same as property generally."

By par. 2, sec. 2, art. 7 of the constitution of 1877, it is provided that: "The General Assembly may, by law, exempt from taxation all public property, places of religious worship or burial; all institutions of purely public charity; all buildings erected for and used as a college, incorporated academy, or other seminary of learning; the real and personal estate of any public library, and that of any other literary association, used by or connected with such library; all books and philosophical apparatus; and all paintings and statuary of any company or association, kept in a public hall, and not held as merchandise or for purposes of sale or gain: Provided, the property so exempted be not used for purposes of private or corporate profit or income." And as carrying into effect this provision of the constitution, the General Assembly, on December 10, 1878, passed an act declaring as exempt from taxation all property enumerated in the constitutional provision above quoted. See Acts of 1878–9, p. 33; Political Code, § 762. If, therefore, the

exemption claimed by the defendants in error exists, it must be found in these provisions of our law. Public property, in the sense as used in the provision for rendering property exempt, means property belonging to the State, or the political divisions thereof, such as counties, cities, towns, and the like. *Trustees of the Academy of Richmond County* v. *Bohler*, supra. The property sought to be exempted not being public property, but being used as a college, incorporated academy, or other seminary of learning, the controlling question upon which the case rests is, is the property used for purposes of private or corporate profit or income? The use to which the property is devoted is to be looked to, to determine whether or not it is exempt. 4 Dutcher, 103; 28 La. An. 212; 19 Ohio, 110; 36 Ohio St. 258; 3 Mich. 172. That property, though enumerated in the constitution and the act of 1878, is not to be exempt if used for income, whether private or corporate, is manifest from the proviso with which the clause in both instruments concludes. The terms "private or corporate" are employed in contradistinction to public. All property other than that which is public is either private or corporate; and if it yields income at all, it is either private or corporate income; and the private or corporate income as used in this section has been interpreted to mean any income which is not public. *Massenburg* v. *Grand Lodge*, 81 *Ga.* 217. Income, as defined by Mr. Webster, is that gain which proceeds from labor, business, property or capital of any kind; as, the produce of a farm, the rent of houses, the proceeds of professional business, the profits of commerce or of occupation, or the interest of money or stock in funds, etc.; revenue, receipts, salary; especially the annual receipts of a private person or a corporation from property, etc. Webster's Int. Dic. 745. In Anderson's Dictionary of Law, 532, income is defined to be: "that which comes in or is received from any business or investment of capital, without reference to the outgoing expenditures." Profit means, acquisition beyond expenditure; excess of value received for producing, keeping or selling, over cost; hence pecuniary gain in any transaction or occupation; emolument. Webster's Int. Dic. 1144.

In construing a statute of the State of New York, authorizing a tax to be levied upon all moneyed or stock corporations "deriving an income or profit from their capital or otherwise," the court, in the case of People *v.* Supervisors of Niagara, 4 Hill (N. Y.), 20, in giving the relative definitions of profit and income, says: "It is undoubtedly true that 'profits' and 'income' are sometimes used as synonymous terms; but, strictly speaking, 'income' means that which comes in or is received from any business, or investment of capital, without reference to the outgoing expenditures; while 'profits' generally mean the gain which is made upon any business or investment when both receipts and payments are taken into the account. 'Income' when applied to the affairs of individuals, expresses the same idea that *revenue* does when applied to the affairs of a State or nation; and no one would think of denying that our government has any revenue because the expenditures for a given period may exceed the amount of receipts." If, in the language of our constitution which denies to the legislature the right to exempt from taxation property otherwise than as therein enumerated, the property be used for private or corporate profit *or* income, the property is not exempt. When the tax officer goes forth to list property which is taxable, all that which he finds employed in the ordinary uses of common life, unless it belongs to the public, he is to regard as taxable. The mere fact that this or that property is a place of religious worship, of burial, an institution of purely public charity, a college, academy, or seminary of learning, public library, etc., is not sufficient to establish the exemption allowed by law, but it must also appear that such property is not used for purposes of private or corporate profit or income; nor is it incumbent upon the tax officer to take accounts with the person or persons in charge of such property, to ascertain whether the income exceeds the expenditures made by such person or persons in connection with such property. If it appear that the property is used for purposes of private or corporate income, the exemption does not attach. As we have seen, it is the use made of the property, and not the use made of the income, from which its taxability or non-taxability must be determined. See gen-

erally, *Trustees of the Academy of Richmond County* v. *Bohler*, supra, *Massenburg* ·v. *Grand Lodge*, 81 *Ga.* 212, and authorities cited in those cases.   In the present case it appears that the defendants in error are the owners of the property claimed to be exempt; that they are using this property in conducting a school or college for the education of girls; that they furnish to the girls their caps and uniforms, which are paid for; that they frequently give entertainments, for some of which admission fees are charged; that they board the pupils of the school for a given price each, and also charge each pupil a tuition fee.   These charges are arbitrarily fixed, without any reference whatever to the actual cost of conducting the school, and must be held, to all intents and purposes, to afford a source, if not of private profit, certainly of income to the owners.   They are competing with other property in the State in the matter of deriving income; and therefore their property must bear its proportion of the burdens of taxation.   It follows that the court erred in adjudging that the alleged exemption was valid.

*Judgment reversed.   All the Justices concurring.*