BRENAU ASSOCIATION *v.* HARBISON, marshal.

120 929.
d124 492.

1. The case of *Mundy v. Van Hoose*, 104 *Ga.* 292, involved different parties from the case at bar, and, while the questions at issue in the two cases are similar, the doctrine of res adjudicata does not apply.

2. Property of a corporation having a capital stock formed for the "business" of conducting an educational institution, and which has the absolute ownership of all the realty and personalty employed in such enterprise, with the right to convey it at will and to make any desired disposition of the income derived from the fees charged for tuition and board, is not exempt from taxation, under the Political Code, § 762.

Argued July 19, — Decided August 12, 1904.

Petition for injunction. Before Judge Kimsey. Hall superior court. May 17, 1904.

*G. H. Prior* and *H. H. Perry,* for plaintiff.
*W. F. Findley* and *W. S. Pickrell,* for defendant.

CANDLER, J. The Brenau Association, a corporation, filed its petition in the superior court of Hall county, to enjoin the sale of its property under an execution for taxes claimed to be due the City of Gainesville for the year 1903, the ground on which the injunction was sought being "that under the constitution and laws of this State said property is exempt from taxation, and was exempt from taxation during and for said year 1903, and said tax execution is void and illegal, and said levy illegal and a trespass." The petition alleges that in the year 1900 the plaintiff was incorporated by an order of the superior court of Hall county, under the provisions of the Civil Code, § 2351, "for the purpose of establishing and maintaining a college for the education of girls and young women, a conservatory of music and art, and an academy or college for the education of boys and young men, and a Chautauqua for the general educational interest of the community, and to run in connection with said proposed business a boarding department, and charge for and collect from those availing themselves of the benefit of said institutions such compensation as will be reasonable and just, with authority to enforce good order, receive donations, make purchases, sell and convey property, not for the purpose of trade and profit, but for promoting the general design of such institutions and advance the cause of education." The petition for incorporation was filed by A. W.

Van Hoose, H. J. Pearce and M. M. Riley.  It prayed for a charter of twenty years duration; and showed that the capital stock of the corporation was to be $50,000, divided into shares of $100 each, ten per cent. of which had been paid in cash, and the entire amount subscribed and due upon demand.  The right to increase the capital stock from time to time was also prayed, and provision was made for a board of directors "who should have control and management of the affairs and business of said Brenau Association."  The directors were given power to select from their number such officers as they might deem fit and "as may be necessary for the conduct and management of [the corporation's] business."  The declaration in the present case alleged, that during the year 1903 the plaintiff maintained, on the property levied upon, a college and conservatory of music and art, for the education of girls and young women, and a boarding department in connection therewith, which was used exclusively for those attending the college and conservatory; that the buildings on the property were erected for and used exclusively as a college; that while fees for tuition and board were charged, all of the money thereby derived was devoted to the college and its necessary expenses, no part of it being used for purposes of private or corporate profit or income; and that the grounds on which the buildings are located were also used exclusively for college purposes, and not for private or corporate gain.  In an amendment to the petition it was admitted that a small building on the property was subject to taxation, and the allegations to the effect that all the income derived from tuition and other fees was devoted to educational purposes in connection with the college were amplified and set out in detail.  The amendment further alleged, "that while the ownership of the said property and buildings is in petitioner, and indirectly in its stockholders, a large part of the money used to construct the same, amounting to between $12,000 and $15,000, has been made up of voluntary contributions by individuals and the public, for educational purposes; that said corporation, the petitioner, and its stockholders, regard said property, the same being to such a large extent enhanced by such contributions, as a trust, and that the institution never has been, and is not now, intended in any sense as a business or money-making enterprise;" that the only stockholders of the corporation are Van Hoose and Pearce, and that

while they hold the stock, "and thus the ultimate title to the property," they have never expected or intended to realize out of it anything further than reasonable returns and salaries for their labor as teachers and professors in the institution; that no profit has been derived from the property that has not been been expended for improvements on the buildings; and that no money has been received by any stockholder, except as a salary for actual services as teacher, and the amount so received has always been reasonable, and considerably less than they could have earned as professors in some other institution.

The defendant, the marshal of the City of Gainesville, demurred to the petition, on the grounds, (1) that it shows on its face that the plaintiff is not entitled to the relief prayed, and sets forth no cause of action; (2) that the petition shows on its face that the Brenau Association is at most but an educational business enterprise; and (3) that while the plaintiff is incorporated as the "Brenau Association," and is educational in its scheme and purpose, its property is not exempt from taxation, because used for private or corporate profit. The defendant also filed an answer, in which many of the allegations of the petition were admitted, but it was denied that the income of the property was devoted to the necessary expenses of the college, and it was averred that the plaintiff was a private business corporation, organized and conducted for purposes of private and corporate profit. A plea in bar was also filed, which set up that the case should not proceed, because the Supreme Court, in the case of *Mundy* v. *Van Hoose*, 104 *Ga.* 292, decided adversely and conclusively against the present contention of the plaintiff; "that the issues and the parties were the same, and that it ought to be and is a final adjudication of the questions and issues involved in this proceeding." On the hearing the plaintiff introduced in evidence a certified copy of its charter, the material portions of which have already been, in substance, set out; the bond for title under which it held the property levied on; the execution against the property, with the levy by the marshal; and its duly verified amended petition. The defendant introduced its sworn answer to the petition, and an affidavit by Riley, one of the original incorporators of the plaintiff. Riley testified that the property levied on was put into the corporation at the price of $42,000; that he, Van Hoose, Pearce, and

Ferrata subscribed for designated fractional parts of the capital stock; that afterwards he and Ferrata sold their stock to Van Hoose and Pearce, deponent receiving par value for his stock; "that said corporation was formed primarily for the purpose of pecuniary and corporate gain and profit to its stockholders, and secondly to advance the cause of education in the community;" that deponent was business manager during part of 1900, all of 1901, and part of 1902, and was a teacher during that period; that the salaries paid Van Hoose, Pearce, Ferrata, and himself were $2,000 per year each, and were fixed by themselves; that the profits arising from the association paid the teachers, all the expenses, and the salaries of the incorporators, "and after paying interest on indebtedness of $18,000, left some surplus, which, instead of paying as dividends on our capital stock, we devoted to the improvement of the property." Evidence was also introduced to show that Van Hoose, the president of the plaintiff, in a statement made before the board of aldermen of the City of Gainesville, had said that he and Pearce owned all the capital stock of the association; that "if the property were to burn that night it would be the personal loss of him and Pearce; that if they should both die, the property levied on and assessed for taxes would become part of their estates and descend to their heirs;" and that when questioned as to who would receive the dividends derived from the running of the school, he replied that there were no dividends. The court declined to enjoin the sale, and the plaintiff excepted.

1. There is no merit in the plea of res adjudicata. The case of *Mundy* v. *Van Hoose*, 104 *Ga.* 292, was a proceeding to prevent the collection of State and county tax on the property involved in the present case. In many respects it was similar to the case at bar, but it was between different parties, and is in no sense an adjudication of the present case.

2. The decision of this case involves a construction of section 762 of the Political Code, the enactment of which (Acts 1878-9, p. 33) was an exercise by the General Assembly of the authority given it by the constitution of 1877, art. 7, sec. 2, par. 2 (Civil Code, § 5884). The constitution of this State does not directly exempt from taxation property of any kind, but confers upon the General Assembly power to do so within certain well-defined

limitations. *Walden* v. *Whigham*, 120 *Ga.* 646. Among other property which the General Assembly is empowered to exempt from taxation are "all buildings erected for and used as a college, incorporated academy, or other seminary of learning;" but it is expressly provided that "the property so exempted be not used for purposes of private or corporate profit or income." In exercising the power so conferred upon it, the legislature followed the wording of the constitution. The question now presented is whether the property of the Brenau Association levied on by the marshal of the City of Gainesville is within the exemption created by section 762 of the Political Code and authorized by the paragraph of the constitution to which we have referred. This is not the first time that this section of the code has been before this court for construction. It was ably and exhaustively discussed by Mr. Justice Little in *Mundy* v. *Van Hoose*, 104 *Ga.* 295, and again by Mr. Justice Lamar in *Linton* v. *Lucy Cobb Institute*, 117 *Ga.* 678; and to what was so well said in those two decisions little can now be added, it being only necessary to apply to the case under consideration the principles announced in the cases cited. While, as to the exemption claimed, a different result was reached in the *Lucy Cobb Institute* case from that reached in the case of *Mundy* v. *Van Hoose*, in the opinion of the majority of the court there was no conflict in the two decisions, and the ruling in the earlier case has never been disapproved or its soundness doubted. In that case it was said, citing 1 Burroughs on Taxation, § 70, and Cooley on Taxation (2d ed.), 204: "Taxation, therefore, is the rule, and exemption from taxation the exception. . . And exemptions are made, not to favor the individual owners of property, but in the advancement of the interests of the whole people. Exemption, being the exception to the general rule, is not favored; but every exemption, to be valid, must be expressed in clear and unambiguous terms, and, when found to exist, the enactment by which it is given will not be enlarged by construction, but, on the contrary, will be strictly construed." See also *Athens Waterworks Co.* v. *Athens*, 74 *Ga.* 413; *Board of Trustees* v. *Atlanta*, 113 *Ga.* 883. The case of *Mundy* v. *Van Hoose*, supra, involves the same property which is sought to be held exempt in the present case; and a careful examination of the records in the two cases will show that the only change effected

in the ownership of the property is that it is now owned by a corporation, whereas it was formerly owned by the incorporators of the plaintiff in their individual capacity. Practically no reason is given why the property should now be exempted, in addition to those formerly urged, except that the property, instead of being owned by Van Hoose and Pearce, is owned by the Brenau Association. In the petition it is alleged that the charter of the Brenau Association was procured under the provisions of the Civil Code, § 2351, which provides for the incorporation of schools, churches, etc., upon the petition of discreet and proper persons, for the purpose of giving them power to enforce good order, receive donations, make purchases, and effect alienations of realty and personalty, not for the purpose of trade or profit, but for promoting the general design of such institutions. A careful reading of the petition for the charter of the plaintiff association does not, in our opinion, bring it within the purview of this section of the code. Its expressed purpose was to charter a stock company to engage in the *business* of education. It contemplated the issuance of stock representing the capital of the corporation, this stock to be the private property of the incorporators, capable of being transferred for value, and in every respect similar to that issued by a corporation organized and conducted purely for pecuniary profit to its stockholders. Under the charter as granted there is no legal reason why dividends should not be paid as on the stock of any other business corporation. The fact that in a given year no dividends were paid does not affect the power to pay dividends, nor alter the character of the corporation as one organized for business purposes and conducted upon business principles. The fact that the incorporators have consistently pursued the policy of paying no dividends and of devoting all the funds earned by the association to the improvement of the property and the advancement of the cause of education, however much it may speak to the credit of those worthy gentlemen, leaves it none the less true that their action is purely voluntary ; that they have full power to turn the money into their own pockets; that the property belongs to the corporation of which they are members, and that the entire benefit of all the improvements placed on the property eventually inures to them or their successors. True, it appears that the plaintiff corporation has been the recipient of

some twelve or fifteen thousand dollars donated to it by various persons interested in its enterprise; and while this money has presumably been applied to the purpose for which it was intended by the donors, and would doubtless be held by a court of equity to be charged with a trust for those purposes, it is nevertheless clear that it is, for all such purposes, the absolute property of the Brenau Association; and it affirmatively appears that Van Hoose, the president of that association, admitted in a statement to the board of aldermen of the City of Gainesville that the property in question belonged to himself and Pearce, and upon their death would descend to their heirs.

In the case of *Linton* v. *Lucy Cobb Institute*, cited supra, the property sought to be taxed belonged to a corporation which had no stock and which could not exist except for educational purposes; and had the corporation earned ten times as much as it cost to conduct it, not one dollar could have legally gone to the trustees or to any of the parties whose gifts had made the institution possible. In the present case there is nothing whatever to prevent the incorporators. from applying all the earnings of the corporation to their own private benefit; and should the corporation be dissolved, as at any time might be the case, its property, greatly enhanced in value from the extensive improvements which have been put upon it from the proceeds of its enterprise, would pass absolutely to the individuals composing it. Thus a clear distinction is apparent between this case and the *Lucy Cobb Institute* case. A grant of exemption from taxation, being in the nature of a renunciation of sovereignty, must, as a general rule, be construed most strongly against the grantee, and can never be permitted to extend, either in scope or duration, beyond what the terms of the concession clearly require. 12 Am. & Eng. Enc. L. (2d ed.) 302. As before stated, exemption from taxation is exceptional, relieving one person, corporation, or class of property, and casting a corresponding burden upon all others; and however meritorious and deserving of encouragement the object thus attained may be, an inequality is created which is repugnant to common right and inconsistent with the principles of republican government. There is a line of cases from other jurisdictions holding that the rule of strict construction should be relaxed in dealing with exemptions of property of religious, charitable, and edu-

cational institutions, on account of the meritorious nature of such institutions, and upon the idea that they relieve the State of burdens which it would otherwise have to bear.    The courts of Indiana, New York, New Jersey, and Tennessee incline to this view.    Indianapolis *v.* Grand Master, 25 Ind. 518; Sisters of Charity *v.* Chatham, 52 N. J. L. 373 ; Orphans Asso. *v.* New York, 104 N. Y. 581; People *v.* Commissioners of Taxes, 11 Hun (N. Y.), 505; State *v.* Fisk Univ., 87 Tenn. 233.    The theory upon which these cases rest is that it is the duty of the State to educate its youth and care for its unfortunate, and that if this were not done by colleges, churches, and charitable institutions, the burden would fall upon the State.    Speaking for myself alone, if the question were an open one in this State, and if this court were not already committed to the doctrine of strict construction in such cases, I would much prefer to follow the line of cases referred to; for I believe that the benefits derived by the community at large from institutions of this character far outweigh the trivial inequality caused by an exemption of their property.    The writer also wishes it to be clearly understood that in taking the position here stated, he has in no degree modified the views expressed by him in his concurring opinion in the case of *Linton* v. *Lucy Cobb Institute,* supra.    The judgment refusing the injunction is

*Affirmed. All the Justices concur.*