RICHARDSON, tax-collector, *v.* EXECUTIVE COMMITTEE OF THE BAPTIST CONVENTION.

No. 8878.   MARCH 4, 1933.

*Carter, Carter & Johnson* and *James L. Mayson,* for plaintiff in error.

*Little, Powell, Reid & Goldstein,* contra.

706

ATKINSON, J. An institution operated as a hospital under the name of Georgia Baptist Hospital occupied certain buildings and the land on which they were erected in the City of Atlanta, for the purpose of conducting a hospital including the conduct of a school for training nurses for employment in the hospital. The enterprise was under actual charge of the Executive Committee of the Baptist Convention of the State of Georgia, a corporation created by the act approved December 22, 1830 (Ga. L. 1830, p. 73). An execution was issued for State and County taxes on the property for the year 1929, by the tax-collector of Fulton County. The Executive Committee of the Baptist Convention of the State of Georgia, hereinafter called the Executive Committee, instituted an action to cancel the execution as a cloud on title and enjoin collection of the tax on the ground that as property devoted to charitable purposes the property was exempt from taxation. The case was tried by consent by the judge, who was authorized by the agreement to pass upon all questions of law and fact without a jury. After introduction of evidence by both sides and argument of counsel, the judge held that the property was not subject to taxation, and granted the prayers of the petition. The defendant excepted.

Taxation is the general rule. Exemption from taxation is the exception. On the question of exemption by the constitution and statute the doctrine of strict construction applies. *Mayor &c. of Gainesville* v. *Brenau College,* 150 *Ga.* 156 (2) (103 S. E. 164). The pertinent language of the constitution, article 7, section 2, paragraph 2 (Civil Code, § 6554), is: "The General Assembly may, by law, exempt from taxation . . all institutions of purely public charity, . . provided the property so exempted be not used for purposes of private or corporate profit or income." The pertinent language of the statute (Civil Code, § 998) is: "The following described property shall be exempt from taxation, to wit . . all institutions of purely public charity, . . provided the above-described property so exempted be not used for purposes of private or corporate profit or income." Though the constitutional provision was not self-operative, it was carried into effect by the statute, the language quoted from both being identical. Although "institutions" may be "of purely public charity," the property will not be exempt if, as expressed in the proviso, the property is *"used for purposes of private or corporate profit or income."* If it be conceded

that the institution in question was "of purely public charity," a controlling question will be was the property *used for purposes of private or corporate profit or income."*

In *Trustees of the Academy of Richmond County* v. *Bohler,* 80 *Ga.* 159 (7 S. E. 633), it was said: ".The constitution does not itself exempt anything, but only grants power to the General Assembly to exempt the enumerated property, expressly denying to it power to exempt any other. . . No matter to whom the institutions belong, whether to a private individual, to a corporation, or to an unincorporated company or association, they are equally exempt, provided they are dedicated to charity and used exclusively as institutions of purely public charity. . . The terms 'private or corporate' are employed in contradistinction to public. . . Public property is not taxed, whether income be derived from it or not; but private or corporate property, though it be connected with the external, visible 'institution,' is not exempt if used for income, since the income from such property must, by reason of its ownership, be either private or corporate, these terms being comprehensive enough to include all income whatsoever that is not public. It may be thought that the produce of à pauper farm, connected with an almshouse, would come within the terms 'profit or income,' and so they would, perhaps, as to any surplus over and above the consumption of the inmates and others attached to the establishment; but the main purpose being to furnish employment to the paupers, and supply them with subsistence at the seat of the institution, the element of profit or income would be altogether secondary and incidental. The property, therefore, would not be used for profit or income in the same sense as if it were farmed or rented out, and not used at all by the inmates, but by others paying for its use as productive capital. The scheme of exemption as to other than public property seems to be this: to exempt all that is used immediately and directly as a part of the establishment in the conduct of the regular business there carried on, but not such as may be devoted to other uses, such as farming, merchandising, manufacturing, etc., and from which profit or income is derived. It is the use of the property which renders it exempt or non-exempt, not the use of the income derived from it. . . Property used to produce income to be expended in charity is too remote from the ultimate charitable object to be exempt. If prop-

708

erty is allowed to be used as taxed property, it also is to be taxed. If it competes, in the common business and occupations of life, with the property of other owners, it must bear the tax which theirs bears. Thus, if even a synagogue or a church were rented out during the week for a store-room or a shop, though divine service might be performed in it on Saturday or Sunday, and though the rents were all appropriated to religious or charitable uses, its exemption would be lost."

In *Massenburg* v. *Grand Lodge,* 81 *Ga.* 212 (7 S. E. 636), referring to these provisions of the constitution and statute, it was said: "Interpreting 'private or corporate income' to mean any income which is not public, we consider that productive property used as capital to raise money to expend in charity is used for private income when the owner is a private individual, and for corporate income when the owner is a corporation. It is no more allowable, under the constitution, for a charitable association to accumulate money by the use of exempt property to be disbursed in charity than it is for a common citizen to do it. For A or B it is no answer to the tax-collector to say, 'This part of my property is rented out to produce my charity fund, and has been for the last ten years; every cent derived from it is given to the poor and needy, and I never considered or used any portion of it as profit or income.' Neither can such an answer be accepted from any charitable organization whatsoever. In so far as such organizations are administrators and disbursers of purely public charity, their property permanently in use for that purpose is exempt from taxation; but in so far as they are capitalists or proprietors engaged in acquiring money or effects to be so disbursed, property of any and every kind from which their income is derived is subject to be taxed the same as property generally." In *Mundy* v. *Van Hoose,* 104 *Ga.* 292 (30 S. E. 783), it was held: "'Buildings erected for and used as a college, incorporated academy, or other seminary of learning,' are not, under the constitution and laws of this State, exempt from taxation, if 'used for purposes of private or corporate profit or income.' . . It follows that grounds, buildings, and other property occupied and used by the owner or owners thereof for conducting a college or school, for attendance upon which charges for board and tuition are made, are subject to taxation." See also *Atlanta Masonic Temple Co.* v. *Atlanta,* 162 *Ga.* 244 (7) (133 S. E. 864), and cit.

In *Linton* v. *Lucy Cobb Institute*, 117 *Ga*. 678 (45 S. E. 53), it was held: "1. Under the constitution productive property is taxable, even though the income be used for charitable or educational purposes. But buildings used as a college may be exempt from taxation, even if in the operation of the institution income is derived from tuition fees. 2. Tuition is a charge made for instruction, rather than as rent for the use of the buildings in which the instruction is imparted. 3. Prior to the adoption of the constitution of 1877 'all buildings erected for and used as a college, incorporated academy, or other seminary of learning' were exempt from taxation, although students were charged for attendance. 4. The same language was incorporated in the constitution of 1877, and was intended to continue the right of the legislature to preserve existing exemptions, and the proviso that 'the property so exempted be not used for purposes of private or corporate profit or income' was not intended to destroy the exemption already granted where incidental income was derived from the operation of the charitable or educational institution. 5. Neither before nor since the present constitution was a tax exemption lost by reason of the fact that tuition fees were charged, where the fees themselves were not used for the purpose of private or corporate profit or income, but were appropriatd to the maintenance of the institution. 6. This ruling is supported by the contemporaneous, uniform, and long-continued construction of the constitution by all taxing officers, and has been acquiesced in by the legislative department of the government. 7. The property sought to be taxed was donated and used solely for educational purposes. There was no capital stock, there were no dividends, and the owners received no profit therefrom. All the receipts were devoted exclusively to the pay of teachers, the maintenance of the institution, and the repair of the buildings. The injunction was properly granted to restrain the levy of the tax fi. fa." In this case Simmons, C. J., dissented, saying: "The record disclosing that the buildings were used for purposes of income, this case is controlled in principle by that of *Mundy* v. *Van Hoose*, 104 *Ga*. 292, and other decisions of this court which are therein cited."

The corporation involved in the instant case has no stockholders to reap private gain by corporate profit. The training-school is an adjunct or part of the hospital. The hospital is supported in sub-

stantial part by private donations. It receives charitable patients without pay; but it also charges for patients able to pay, the proportion being vastly in favor of the latter. The income is devoted to the purposes of the institution. In these circumstances, construing and applying the clause making the exception in the tax-exemption statute (Civil Code, § 998), and especially the words therein "private or corporate profit or income" as they were construed and applied by this court in *Trustees* v. *Bohler* and *Massenburg* v. *Grand Lodge,* supra, the property in question is used for "corporate income," and is not exempted from taxation. In other jurisdictions it is generally held that property so used by charity hospitals is exempt from taxation. Such decisions are of course based on the law of the State to which they apply, not identical with the statute in this State, and do not depend on binding precedents of long standing, such as confront this court, and do not lead to a conclusion different than that above expressed. The court erred in granting the injunction.

*Judgment reversed. All the Justices concur.*

RUSSELL, C. J., concurring specially. I heartily concur in the statements so tersely made by Mr. Justice Atkinson in the beginning of the opinion delivered in behalf of the court. Taxation is the rule. Exemption is the exception. I concur in the opinion and judgment, however, upon the express understanding on my part that nothing said in this case is in conflict with the general principle followed in *Linton* v. *Lucy Cobb Institute,* 117 *Ga.* 678 (4, 7) (supra). If a charitable institution receives and reserves for the benefit of those who in any capacity are conducting it, either income or profit, it is liable to tax. On the other hand, it is my opinion that in any instance where it appears that all the receipts from pay patients are devoted exclusively to the charitable purpose of caring for patients who are unable to pay and therefore are charity patients, the property of such an institution is entirely exempt by the express provisions of the constitution of Georgia of 1877. In the constitution, art. 7, sec. 2, par. 2, "all institutions of purely public charity" may by law be exempted from taxation, "provided the property so exempted be not used for purposes of private or corporate profit or income." Taxation being the rule and the exemption the exception, it devolves upon any institution which claims to be exempt to show that it falls within the exemption and

is protected thereby. It must show that whatever profit or income is received from patients is devoted exclusively to the maintenance of the charity. This does not appear in the present case. To adopt the thought of Mr. Justice Lamar in the *Lucy Cobb Institute* case, were the proviso just quoted construed differently it would "make a solemn provision without a subject-matter on which to be operative; for in 1877 there was not within the borders of the State a hospital, library, college, academy, seminary, or church which was in a position to accept the intended and proffered bounty. . . To say that the convention meant the exemption only for those institutions which might be conducted free of charge was to say that it granted a privilege which no one could claim; that it sought the cheap and ignoble reputation of offering what no one could take; that in order to gain the advantage of an exemption these institutions had to sacrifice the greater for the less, . . and in effect should be forced to cut down the tree to gather the fruit." So I construe the statute (Civil Code, § 998), as well as the provision of the constitution which authorized the passage of the law which provides exemptions in certain specified instances from the general rule that all property should be subject to tax, to mean that, even though charitable or educational institutions should receive income or profits in the conduct of their regular calling or business, the exemption would not be lost if the entire profit were expended in enlarging and increasing the number of persons who may be the objects of the charity.