MU BETA CHAPTER CHI OMEGA HOUSE CORPORATION
*v.* DAVISON, tax-collector, *et al.*

No. 13731.   MAY 14, 1941.

126

W. A. Slaton, for plaintiff.

Ellis G. Arnall, attorney-general, Andrew J. Tuten and Claude Shaw, assistant attorneys-general, Rupert A. Brown, Lamar C. Rucker, and W. K. Barrett, for defendants.

GRICE, Justice. The problem presented is whether or not the plaintiff's property is exempted from taxation under the constitution and laws of this State. Art. 7, sec. 2, par. 2 (Code, §§ 2-5002, 92-201). If exempt, it is only because it is property used exclusively as an institution of purely public charity. The test is not whether the plaintiff is an organization of purely public charity, but whether the property itself is dedicated to charity and used exclusively as an institution of purely public charity. *Richardson* v. *Executive Committee of the Baptist Convention,* 176 *Ga.* 705 (169 S. E. 18) ; *Tharpe* v. *Central Georgia Council,* 185 *Ga.* 810 (196 S. E. 762). It is the use to which the property is put, rather than the declaration of purpose found in its owner's charter, that determines the question of exemption from taxation. Theta Xi Building Asso. *v.* Board of Review, 217 Iowa, 1181 (251 N. W. 76) ; Beta Theta Pi Corporation *v.* Board of Commissioners, 108 Okla. 78 (234 Pac. 354). We are therefore to consider the entire

evidence on that subject, in order to ascertain whether the claim of exemption is well founded. *Tharpe* v. *Central Georgia Council, supra.* In doing so, we are to bear in mind that on the question of exemption from taxation by the constitution and statute the doctrine of strict construction applies. *Mayor &c. of Gainesville* v. *Brenau College,* 150 *Ga.* 156 (103 S. E. 164) ; *Richardson* v. *Ex. Com., supra.* The property involved is a dwelling-house purchased by the plaintiff for the purpose of being occupied as a place of residence by members of the local chapter Mu Beta of the fraternity Chi Omega who are students at the University of Georgia. It is so used and occupied. It is referred to in the evidence as the chapter house. A Greek-letter fraternity house owned by the fraternity was held exempt from taxation by the Supreme Court of Oklahoma under a provision of the constitution of that State which exempted property "used exclusively for schools, colleges, and all property used exclusively for religious and charitable purposes." Beta Theta Pi Corporation *v.* Board of Commissioners, supra.

The Supreme Court of Kansas held exempt similar property similarly owned, the decision being placed on a Kansas statute which exempted "all real estate not exceeding one-half acre in extent and the buildings thereon situate, and used exclusively by any college or university society as a literary hall or dormitory," etc. Kappa Kappa Gamma House Association *v.* Pearcy, 92 Kan. 1020 (142 Pac. 294, 52 L. R. A. 995). A like ruling was made by the Supreme Court of Indiana, but there too it was placed on a statute expressly exempting property owned by any Greek letter fraternity. In the first of these three cases the property was owned by the fraternity using it. The Oklahoma court's decision seems to be unsupported, and to run counter to many other well-considered cases; but if its soundness were conceded, it is inapplicable here, because it dealt with property owned by the fraternity itself. Most courts which have dealt with the question have taken the view that the primary purpose of a college fraternity house is to furnish a private boarding place and dormitory for the use of the fraternity members, and accordingly have generally held that college fraternity houses are not exempt from taxation on the ground that they are beneficent and charitable organizations. See 35 A. L. R. 1045, note, where the authorities are collected, following the report of the case of Knox College *v.* Board of Review, 308

Ill. 160 (139 N. E. 56). A well-reasoned case is that of People *v.* Alpha Pi, 326 Ill. 573 (158 N. E. 213, 54 A. L. R. 1377). The facts there were more like those of the instant case, except that there the corporation's purpose was to provide a house at moderate cost to those able to pay, and gratuitously to those unable to pay, the recipients to be members of a certain Greek-letter fraternity. Exemption was claimed under a provision of an Illinois statute, a clause of which exempted from taxation "all property of institutions of public charity, all property of beneficent and charitable organizations," etc. The court ruled as follows: "To constitute a 'public charity,' benefit must not be conferred on certain and defined individuals, but must be conferred on indefinite persons composing public, or some part of the public; but indefinite class may be of one sex, or inhabitants of particular city, town, or county, or members of particular religious or secular organization."

Counsel for the plaintiff in his brief says: "Plaintiff does not contend that its property is exempt from taxation because it is a sorority house, or chapter house. It bases its claim for exemption from taxation solely on the provisions of the charter creating it as an institution of purely public charity, and providing that no private person may ever have any right or interest in its property, but all of it must be used for the purpose of advancing the cause of education." We have heretofore undertaken to show that its right to have this property relieved of its share of the tax burden is not to be measured alone by the words of its charter. That may and should be looked to, but the purpose therein set forth is not conclusive of its right to exemption. Viewing the case as a whole, we do not find that the corporation has provided a home for young women unable to pay board. Its sheltering arms are not alone for those who are poor in this world's goods. There is not the slightest suggestion in the record that this is a home for the underprivileged, those "to fortune and fame unknown." No "whosoever will" sign is hung out. Those who may share its comforts and benefits are only those who are acceptable to those already on the inside, who are willing to accept the stranger on the outside "as a fraternal associate." Membership in the fraternity is a prerequisite to sharing the benefits of the house, the membership being brought about by the invitation of the existing active members. As further illustrative of whether or not the use to which this prop-

erty is put makes it an institution of charity, of public charity, of purely public charity, as it must be before the exemption can be allowed, let it be remembered that each person who is eligible to reside at the chapter house must first pay to the local chapter a "pledge" fee of ten dollars, an initiation fee of sixty dollars, local chapter dues of four dollars per month, and national dues of eight dollars per annum. But this is not all. The record further recites: "Each of the members of said chapter who reside at said chapter house pays to the local chapter, Mu Beta Chapter Chi Omega, the sum of $30 per month for her room and board, which charge is identical with the charges made by the University of Georgia for the use of its dormitories where meals are furnished as well as rooms. Of the payments made by the members residing at said chapter house, the sum of $10 per month is set aside by the chapter as a house fund, and the remainder is used by the chapter to furnish food, chaperone's or house mother's salary, the pay of servants to prepare and furnish food, to serve the food, to clean and keep in order the chapter house, and to provide as comfortable and convenient living accommodations for the students as may be possible, including fuel, lights, and water at the chapter house. Any surplus from the monthly payments by the resident members are used either to improve the living conditions of the active members residing in the chapter house, or returned to those making the payments."

It is difficult for us to distinguish on principle the facts in the record before us from a case like this: Suppose Mr. A, a benevolent citizen of a college town, in order to insure sufficient and wholesome boarding places for students, buys a lot with a large dwelling thereon, and places Mrs. B in possession. The latter rooms and boards certain invited students therein, charging each one the usual and prevailing price, and in addition exacts from each boarder a stated sum which she pays to Mr. A. Although he derives no profit therefrom, could it be said that the boarding-house was an institution of purely public charity? We apprehend not. We are obliged to conclude that the contention of the plaintiff that it is entitled to an exemption from the payment of taxes must be denied. In addition to the Georgia cases above cited, we list for convenience the following: *Trustees* v. *Bohler,* 80 *Ga.* 159 (7 S. E. 633) ; *Massenburg* v. *Grand Lodge,* 81 *Ga.* 212, 218 (7

130

S. E. 636); *Mundy* v. *Van Hoose,* 104 *Ga.* 292, 300 (30 S. E. 783); *Linton* v. *Lucy Cobb Institute,* 117 *Ga.* 678, 683 (45 S. E. 53); *Brenau Association* v. *Harbison,* 120 *Ga.* 929 (48 S. E. 363, 1 Ann. Cas. 836); *Brewer* v. *American Missionary Asso.,* 124 *Ga.* 490 (52 S. E. 804); *City of Waycross* v. *Waycross Savings & Trust Co.,* 146 *Ga.* 68 (90 S. E. 382); *Atlanta Masonic Temple Co.* v. *Atlanta,* 162 *Ga.* 244 (133 S. E. 864); *Richardson* v. *Executive Committee of the Baptist Convention,* 176 *Ga.* 705 (169 S. E. 18); *Elder* v. *Atlanta Southern Dental College,* 183 *Ga.* 634, 646 (189 S. E. 254. *Judgment affirmed. All the Justices concur.*