ELDER *et al.* *v.* ATLANTA-SOUTHERN DENTAL COLLEGE.

No. 11329. DECEMBER 4, 1936. REHEARING DENIED DECEMBER 15, 1936.

*J. C. Savage, C. S. Winn,* and *Bond Almand,* for plaintiffs in error.

*Hal Lindsay* and *Jones, Fuller & Clapp,* contra.

BECK, Presiding Justice.  Atlanta-Southern Dental College (hereinafter referred to as the college), an educational corporation, filed a petition praying that the City of Atlanta and Riley F. Elder, municipal revenue collector and ex-officio marshal of that city, be enjoined from enforcing, by levy and sale or otherwise, tax executions for the years 1933 and 1934 against the college (the execution for 1933 having been actually levied on the college property, and advertisement of the same for sale having been commenced before the filing of the petition), on the ground that the college was exempt from the payment of taxes; and for other relief.  The petition substantially stated the following: The college was incorporated on March 1, 1926, by Fulton superior court, in conformity to and in pursuance of the Code of 1910, § 2824, as amended (Ga. L. 1914, p. 58).  A copy of the charter was attached to the petition.  It authorized the establishment of a college for teaching of the science of dentistry in all its branches, and provided the corporation should have no capital stock, and should not be conducted for pecuniary gain or profit to any one, but "its

sole purpose shall be to give, promote, and extend instruction and education in dentistry and encourage and promote research and study in all branches of learning and science relating to dentistry." The college was authorized to establish and conduct schools and educational institutions for teaching the science of dentistry in all its branches; to employ teachers, educators, and instructors, and to provide courses of study for its student bodies, with the right to confer degrees; to provide and conduct a school for the training of dental nurses, and to confer degrees on the graduates of such school; to procure and maintain a library, to maintain works on dentistry and the dental profession, and to raise funds for the maintenance of said institution by charging a reasonable tuition fee to students, and all receipts from tuition and otherwise "shall be applied exclusively to the maintenance of the institution, and no profit shall be derived from the operation, business, or property of the college by the corporation or any of its officers or trustees." It was organized, not for the purposes of trade and profit, but for the promotion of the general designs of the institution; to receive donations; to acquire, buy, or transfer, and to convey all property of any kind whatsoever necessary, proper, or incidental to carrying into effect the purposes of the college. It was authorized to borrow money and to give security for the same; to issue bonds, notes, and other evidences of indebtedness. Membership in the corporation was limited to the incorporators and such others as might be duly elected thereto by the board of trustees. The management and control of the corporation was vested in a board of trustees to be elected by the members of the corporation, consisting of seven members, with vacancies to be filled in the manner provided by the by-laws. The charter further provided: "If, for any reason and at any time, this corporation shall cease to exercise the powers and prerogatives granted by this charter and shall cease to function as a dental college or institution, the board of trustees then duly elected and in office shall, after the payment of all legal obligations of the institution, devote any fund or funds, or property, real or personal, to any institution or organization which, in their opinion, is contributing to the education of dental students, or the advancement of learning in the dental profession."

It was alleged that the college was an educational corporation

within the meaning of the law under which it was incorporated, and had never had any capital stock, stockholders, or shareholders, nor had it declared or paid dividends, nor set apart for distribution nor disbursed any portion of its earnings, gross or net, to any one; that at all times it applied all of its earnings, first, to the necessary expenses for the operation of the dental college, and then to the payment of its indebtedness arising out of the purchase of necessary real estate and construction of its college building, and for the furnishing and equipping of the building, and after payment of such items all of the earnings have been used by it for carrying out the purposes for which it was organized and incorporated, to wit, for the teaching and advancement of the science of dentistry, and for no other purpose; that since its organization it has been governed by a board of trustees; that from its membership the board of trustees had named an executive committee which was charged with the details of management and operation pursuant to the by-laws, which provided for the selection of the trustees and their duties and for the selection of an executive committee and their duties, and for the management and operation of the college; that the college had never been operated or carried on for the purpose of trade or profit, but solely for the purpose of promoting the general design of the institution, and was open to the general public; that the college, subject to certain encumbrances, was the owner of certain real property located at the corner of Forrest Avenue and Courtland Street in Atlanta, which property included the building erected for and used by the college; that no part of the college was leased or occupied by tenants, and no part of the income was derived from any rental thereof, nor had any part of the property ever been used by the college for the purpose of private profit or income; that the college building upon which the tax execution for 1933 had been levied, and which the City of Atlanta was seeking to sell, was exempt from all taxation by virtue of the exemption created by the General Assembly of Georgia under section 998 of the Code of 1910, which act was passed pursuant to the authority vested in the General Assembly by the constitution of Georgia.

The defendants filed a general demurrer and moved to dismiss the petition, on the following grounds: (1) It set forth no cause of action. (2) It appears from the charter that the plaintiff is

not entitled to the relief prayed for, and that it does not come within the constitutional and statutory exemptions from taxation. The defendants also answered the petition by alleging that the college is a business operated for corporate and private gain; that the corporation, which has no capital stock, purchased its property from a stock corporation of the same name by the issuance of bonds to the former stockholders of the predecessor corporation; that these bonds bear interest, and that the payment of interest to the holders of these bonds, which represent the purchase-price of the college property sold to the present plaintiff corporation, disproves the allegation of the petitioner that the college is not operated for personal gain and profit, the interest so paid being derived from profits earned in the operation of the college; that the entire property of the college is used for the purpose of private and corporate gain; that it has borrowed money and paid interest on the same, as well as part of the principal, and that such payments of interest and principal represent earnings and profits derived from the operation of the college, so as not to entitle the plaintiff to the exemption from taxes as claimed by it; that the salaries paid to the dean, the president, and the instructors of the college are exorbitant, that these salaries, being derived from the earnings in the operation of the college, show corporate and private gain, which is contrary to the express provisions of the charter; that the charter was obtained by the plaintiff in 1926 for the purpose of evading the law and avoiding the just payment of taxes; and that it was not in good faith, but was a subterfuge to circumvent the law, increase the profits to the shareholders or bondholders, and avoid the just payment of taxes. The court overruled the demurrer, and after introduction of evidence passed an order enjoining enforcement of the tax executions.

■ Under the terms of the charter and the allegations of the petition as set forth above, the court did not err in overruling the demurrer. It is manifest that the college was chartered as a purely educational institution, "having no capital stock, and not to be conducted for pecuniary gain or profit to any one, but its sole purpose shall be to give, promote, and extend instruction and education in dentistry and encourage and promote research and study in all branches of learning and science relating to dentistry." The purposes thus stated are not necessarily negatived by the fur-

ther provision in the charter that "If, for any reason and at any time, this corporation shall cease to exercise the powers and prerogatives granted by this charter and shall cease to function as a dental college or institution, the board of trustees then duly elected and in office shall, after the payment of all legal obligations of the institution, devote any fund or funds, or property, real or personal, to any institution or organization which, in their opinion, is contributing to the education of dental students, or the advancement of learning in the dental profession." This provision will not be construed to be inconsistent with preceding provisions, if, considering all the provisions together, they can be reasonably harmonized. The provision first above quoted makes the college a public rather than a private institution, "not to be conducted for pecuniary gain or profit to any one." If the contingency should arise whereby under the second quoted provision the board of trustees are empowered to devote the funds and properties of this college to some other institution performing the service therein stated, they would not be deprived of the right to exercise this privilege by construing this provision to mean that the institution or organization to which the trustees may devote the funds and properties must be one of like nature to this college—a public and not private institution, and one not conducted for pecuniary gain or profit to any one. And we so construe it. So, being an institution the physical properties of which are not to be used for purposes of private or corporate profit or income, and the allegations of the petition being to the effect that no part of its property has ever been so used, the college building in question here, if proof be made as alleged, is exempted from taxation by virtue of the exemption created by the General Assembly of this State under the Code, § 92-201, enacted in pursuance of the authority vested in the General Assembly by the constitution of Georgia (§ 2-5002). The petition set forth a cause of action.

■ By agreement of counsel this case was submitted to the judge to hear evidence and render judgment without the intervention of a jury. The plaintiff tendered in evidence excerpts from the pleadings in a suit for mandamus filed by one Rollins, as a taxpayer of the City of Atlanta, against the defendants in the present case, to require them to collect the full amount of taxes assessed by the city against the property of the Atlanta-Southern

Dental College, it being alleged that the mayor and council passed a resolution authorizing settlement of the taxes on a basis of 25 per cent. of the original amounts assessed. In that suit Rollins made allegations similar to those now made by the defendants in this case, to wit, that during the years 1926 to 1932, inclusive, the property of this college was used for purposes of private and corporate gain; that it derived large profits from the operation of its clinic, had paid interest to the holders of its bonds, and in addition had paid exorbitant salaries to its officers; and that the organization of a non-stock corporation as successor to the former stock corporation of the same name was "solely for the purpose of evading the tax laws of the State of Georgia." An excerpt from the answer of the defendants in that suit was tendered in evidence in this case by the plaintiff, and was in substance as follows: Assessments were made against the property of the college, and the matter was referred to the city attorney for investigation. He examined the charter and undertook to ascertain if any corporate profit was received from the operation of the college, or other basis upon which taxes could be collected. From his information, so far as he could ascertain, the college was conducted in the same manner as the other colleges are conducted in the City of Atlanta, under the laws of the State of Georgia, and accordingly he advised that the fi. fas. issued against the college be not pressed for collection. After this there was litigation between certain dentists of the City of Atlanta and Atlanta-Southern Dental College, from which it developed that the college was operating a clinic in which it carried on the practice of dentistry, and from the operation of this clinic received fees in excess of the cost of the materials furnished; and it was held that the college was engaged in the practice of dentistry. Accordingly, the question of taxation was again considered, and pending the consideration of that question the college filed with the tax-assessors and receivers an application for a reduction of taxes; and the following consideration moved them in agreeing to the settlement of the taxes as made:

"Under the laws of the State of Georgia, colleges are exempt from taxation, and it appears that Atlanta-Southern Dental College has a charter under which it is authorized to operate a dental college in the City of Atlanta, and accordingly, under the letter of the statute, the building is devoted to this purpose, and the col-

lection of tax thereon is doubtful. It further appeared that there was no corporate profit received by the college. It was not a stock company, and no dividend could be paid on stock, because none was issued. It appeared that the moneys received from the operation of the college were turned back for the purpose of the college, either for the payment of salaries and expenses, or for payment on account of the loan which was upon the property, securing outstanding bonds upon the property of said college. These defendants felt that there was very great doubt about enforcing these tax liens aganst a college of the kind described, although it received tuition and made charges for the operation of the clinic in excess of the cost of materials, because, whatever sums were received from the operation of the college were not appropriated for corporate profit, or for the benefit of stockholders, but went back for the operation of the college, either as stated, or for the payment of salaries, expenses, or·for the account of the bonds secured by loan on the property of the college. Accordingly, . . in view of the fact that no corporate profit was paid, and that the money received from the institution went to the upkeep thereof, defendants felt that an adjustment should be had, and one was made upon the basis of twenty-five per cent. of the taxes levied." When these excerpts from the pleadings in the case referred to were tendered in evidence, the defendants objected to their admission, on the ground that they were irrelevant and immaterial, because the evidence involved allegations made in an answer to another suit, and the opinions expressed therein by the defendants in their answer threw no light on the question whether or not the property of the plaintiff was exempt from taxation. The court made the following ruling: "I think these allegations are admissible solely as they would illustrate the question of personal good faith or personal fraud on the part of these stockholders as alleged in his answer in this case. I sustain your objection, Mr. Savage [attorney for the City of Atlanta], as to the effect, or the real question of law in this case; but since you put that allegation of fraud and deceit in, . . · I think it is admissible to refute that." Error is assigned on this ruling. In view of the charges made by the defendants, that "the charter obtained by the plaintiff corporation in 1926 was obtained for the purpose of evading the law and avoiding the just payment of taxes, and that it was not in .

good faith, but was a subterfuge to circumvent the law, increase the profits to the shareholders or bondholders, and avoid the just payment of taxes," we think the excerpts from the pleadings in the case above referred to, particularly from the answer in that case made by the same defendants as those in the present case, were admissible for the limited purpose for which the court admitted the same—to illustrate the question of good faith on the part of the plaintiff corporation.

■ During the trial, Dr. S. W. Foster, the president of the college, was permitted to testify that since a court decision in another case, holding that it was an illegal practice of dentistry for this plaintiff corporation to do certain dental work in its clinic and charge the patient therefor in excess of the cost of materials used by the college in such work, and that the college should be enjoined from amending its charter so as to give it "the right to conduct and maintain a clinic in said college for the purpose of teaching all phases of modern dentistry and demonstrating dental operations to the students, and for the purpose of training students in the art and practice of dentistry by permitting them to perform dental operations under competent supervision, with the privilege of charging such fees for said services as may be deemed necessary to cover the expenses of the clinic and the cost to the college of conducting the same," the plaintiff had revised its charges "based on an estimated cost price." This testimony was objected to on the ground that it "had no bearing on the issues in this case of whether or not plaintiff's property was exempted from taxation or in the operation of this property it derived either income or profit." This objection is without merit, in view of the express allegation in one paragraph of the answer of the defendants, that "since the organization of the Atlanta-Southern Dental College it has been engaged in the unlawful corporate practice of the profession of dentistry, under the guise of a clinic, . . and has earned vast profits from its illegal practices."

■ In the bill of exceptions it is recited: "The plaintiff tendered in evidence the following document, which . . was identified as being correct by witness Dr. R. R. Byrnes, who testified that this was the statement which had been made up under his direction from the books kept by the infirmary, showing the net result of the clinic's operation for the years listed. . . The

court admitted said document in evidence, because, he stated, they were calculations and tabulations from the audits already admitted in evidence, and that the court 'would not have time to figure it out.' To the admission of said statement the defendants then and there objected on the grounds that the same was secondary evidence and was hearsay, in that the defendants contended that the statement was not prepared by the witness, but was made up from the figures and data from the records and books of the corporation and prepared by the bookkeeper and Dr. Enloe, and was further inadmissible because, as defendants contend, from the audits of the corporation which had been introduced in evidence for the years 1926 to 1933, inclusive, it is shown that the infirmary showed a net income from clinical operations." The statement so admitted in evidence over objection is headed: "Comparative Infirmary Statement," and is a summary, for each of the years indicated, of the operating revenue of the clinic, the cost of materials and supplies, the operating expense and overhead, and the net income. It covers a period of operations over a period of fourteen years, whereas the audits referred to are for only seven years, and do not show any such concisely assembled tabulation of infirmary operations segregated from other operations of the college. On the contrary, these audits cover twenty-one closely-written pages of tabulation embracing between 700 and 1000 separate items, from which the court stated that he "would not have time to figure it out." Therefore the objection that the audits already in evidence "showed a net income from clinical operations" was a conclusion. The judge having stated that he needed such a summary to enable him to figure out the information about which there was a dispute, the statement objected to, which was made up under the direction of the dean of the college and identified by him as correct, was admissible, in the absence of an offer by the objectors to have the same done by the auditor himself or some other competent person. This assignment of error is without merit, if in fact it is not in itself incomplete and insufficient.

■ The contention of the plaintiffs in error that the surrendering of the charter of a former corporation having a capital stock and operated for purposes of private profit to its stockholders, and the obtaining in lieu thereof of what they call an eleemosynary charter for the present Atlanta-Southern Dental College, was not

in good faith, but was a subterfuge to circumvent the law, increase the profits to the shareholders, and avoid the just payment of taxes, is not borne out by the evidence. The predecessor stock corporation had a capital stock of $50,000. Its earnings and profits were very large for a number of years. Dr. Byrnes, the dean, who for many years was connected with the former institution, testified that the percentage of earnings of the stock corporation for the year 1925, the year before the present non-stock charter was obtained, was over 38 per cent. on the basis of a capitalization of $50,000, and for the year ending June, 1924, over 36 per cent. The earnings, over and above the dividends paid, either accumulated as surplus or were used in acquiring real estate and equipment for the corporation. Notwithstanding these large profits to the stockholders, they surrendered their charter and turned over all the properties of the corporation to a non-stock corporation to be organized as a purely educational institution, and not for private profit to any one. There is evidence in the record to the effect that the Dental Educational Council of America, which is the governing body of dental education and is composed of representatives of dental colleges, State boards of dental examiners, and of the dental profession at large, looked with disfavor upon any dental school which might be considered a stock company, and the predecessor stock corporation had never been given but a class B rating by that organization, and it was for the purpose of maintaining a college with a class A rating that the present charter was obtained for the defendant in error, and it enjoys that rating to-day. The net assets and properties of the former stock corporation at the time it surrendered its charter and its properties to the present college were variously estimated by witnesses. The lowest estimate was a net valuation of around $172,500; other estimates were much higher than that. Hence, with a capital stock of $50,000, each of the 500 shares of stock would be worth not less than $300. The stockholders sold to the defendant in error all these properties, taking in payment therefor, not cash, but bonds of the defendant in error aggregating less, in their face value, than the value of the stock, to wit, $150,000, or 1500 bonds of $100 each, maturing in twenty years and bearing 3 per cent. interest. These bonds were subject to first and second mortgages placed on the properties of the college to secure loans procured for

the erection of buildings and the purchase of equipment, so as to raise the standard of the institution to a class A college, and these bonds were secured by a third mortgage thereon. The bondholders could not proceed to foreclose until and unless there was a default in the payment of the stipulated 3 per cent. interest for a period of six consecutive years, and then only upon the affirmative action of the holders of not less than two thirds in amount of the outstanding bonds. From the foregoing it is manifest that there is no foundation for the contention that this defendant in error was organized in bad faith and for the purpose of increasing profits to the shareholders; especially in view of the evidence, which is abundant, that the salaries paid to the officers are not exorbitant when compared to the salaries paid in other dental colleges throughout this country; and that these salaried officers own only about one fifth of the bonds which were accepted in exchange for stock. This is the fifth largest dental college, in point of number of students, in the United States, and is the only dental college in the southeastern States.

The record in this case is bulky and voluminous. About forty pages of the evidence contain well over a thousand tabulated items, while on as many other pages there are literally hundreds of figures as to costs, expenses, and the like; and a large portion of these in no way pertain to the operations of this college, such as bulletins and questionnaires of some dental society on the subject of fees. And much of the testimony is likewise remote from the particular question here for decision, which is whether or not this college is being operated for purposes of private or corporate income or profit, so as not to be entitled to have its buildings and equipment exempted from taxation. All taxes assessed against this college for the years before 1933 were contested, but have been settled. Only the tax executions for the years 1933 and 1934 are here in question. Since its present incorporation in 1926 the college has been able to keep up the interest payments on the obligations assumed, reducing the mortgages and retiring some of the bonds, but these latter were retired by the holders thereof accepting fifty to sixty per cent. of their face value. But the evidence is conflicting on the question whether or not the college for the years 1933, 1934, and 1935 has made a profit. By reference to the audits introduced by the defendants we find the statement that

the net income of the college for the year 1933 was only $1,734.47 out of a total revenue of $132,140.20; suffered a loss for the year 1934 of $6,856.29, and a loss in 1935 of $5,550.44. These audits constitute the principal evidence introduced by the defendants. They introduced only one witness, a dentist, who gave no testimony regarding the revenues or expenses of the college; and one affidavit to the effect that the deponent had ascertained that the members of the faculties of the University of Georgia, the Georgia School of Technology, and certain other Georgia institutions are not as highly paid as are some of the officers of this dental college. While there is a conflict in the testimony as to whether the college has made any corporate profit since its organization, there is no showing that any private profit has been made. Neither the payment of 3 per cent. interest on the bonds which were issued as a fair purchase-price for the stock of the former corporation and its properties, nor even the retirement of some of these bonds at 50 to 60 per cent. of their face value, constitutes the operation of this college for private profit.

It has been held by this court, Chief Justice Bleckley writing the opinion: "It is the use of the property which renders it exempt or non-exempt, not the use of the income derived from it." *Trustees* v. *Bohler,* 80 *Ga.* 159, 163 (7 S. E. 633). That case involved the question whether "the produce of a pauper farm, connected with an almshouse, would come within the terms 'profit or income.'" It was said that "the main purpose being to furnish employment to the paupers, and supply them with subsistence at the seat of the institution, the element of profit or income would be altogether secondary or incidental. The property, therefore, would not be used for profit or income in the same sense as if it were farmed or rented out, and not used at all by the inmates, but by others paying for its use as productive capital." That decision has been cited and followed subsequently in a number of cases. To the same effect see *City of Waycross* v. *Waycross Savings &c. Co.,* 146 *Ga.* 68 (4) (90 S. E. 382); *Linton* v. *Lucy Cobb Institute,* 117 *Ga.* 678 (45 S. E. 53); *Mayor &c. of Gainesville* v. *Brenau College,* 150 *Ga.* 156 (103 S. E. 164), where the college had a bonded debt; *Baggett* v. *Georgia Conference Association of Seventh Day Aventists,* 157 *Ga.* 488 (121 S. E. 838).

The trial court's findings on the facts were against the conten-

tions of the municipal revenue collector; and in the face of the foregoing statements appearing in the audits in evidence, we can not hold that the ruling of the judge must be reversed for his finding that "The evidence in this case is held to show that the property of the college is not used for the purpose of making either private or corporate income or profit to the corporation or owners, so as to make it liable for the taxes claimed."

*Judgment affirmed. All the Justices concur, except Atkinson and Bell, JJ., who dissent.*

ATKINSON, Justice, dissenting. It is declared in article 7, section 2, paragraph 2, of the constitution of this State (Code, § 2-5002) : "The General Assembly may, by law, exempt from taxation . . all institutions of purely public charity; all buildings erected for and used as a college, incorporated academy, or other seminary of learning, and also all funds or property held or used as endowment by such colleges, incorporated academies, or seminaries of learning, provided the same is not invested in real estate; . . provided, the property so exempted be not used for purposes of private or corporate profit and income." This constitutional provision was carried into effect by legislative enactment expressed in the same language. Code, § 92-201. It will be perceived that the exemption from taxation here referred to applies with equal force to both "institutions of purely public charity," and to "buildings erected for and used as a college, incorporated academy, or other seminary of learning." It will be perceived further that funds "or property held or used as endowment by such colleges, incorporated academies, or seminaries of learning," are exempted provided same are not invested in real estate. It will further be perceived that the several exemptions so expressed are made only "provided the property so exempted be not used for purposes of private or corporate profit and income." This last provision applies with equal force whether the particular exemption comes within the class of institutions of purely public charity, or in the class of buildings erected for and used as a college, incorporated academy, or other seminary of learning. In *Richardson* v. *Executive Committee of the Baptist Convention*, 176 *Ga.* 705 (169 S. E. 18), the question was involved whether certain buildings and the land on which they were erected in the City of Atlanta, occupied and used by the Georgia

Baptist Hospital for the purpose of conducting a hospital and the conduct of a school for training nurses for employment in the hospital, were exempt from taxation under the claim that the property was used for purely charitable and educational purposes. It was said in the opinion that although "institutions" may be "of purely public charity," the property will not be exempt if it is *"used for purposes of private or corporate profit or income."* And "If it be conceded that the institution in question was 'of purely public charity,' a controlling question will be was the property *'used for purposes of private or corporate profit or income.'*" This controlling question was fully considered by the court, and upon authority of the decisions in *Trustees of the Academy of Richmond County* v. *Bohler,* 80 *Ga.* 159 (supra), *Massenburg* v. *Grand Lodge,* 81 *Ga.* 212 (7 S. E. 636), and *Mundy* v. *Van Hoose,* 104 *Ga.* 292, it was held that the property in question was not exempt from taxation, the fundamental reason being stated that the property in question is used for "corporate income." The headnote, which was the official decision of the court, was as follows: "It is declared in the Civil Code (1910), § 998: 'The following described property shall be exempt from taxation, to wit . . all institutions of purely public charity, . . provided the above-described property so exempted be not used for purposes of private or corporate profit or income.' Under the construction of this law as stated and applied in former decisions of this court, and particularly the words 'for purposes of private·or corporate profit or income,' a hospital supported in substantial part by donations and largely by income derived from 'pay patients' received in the hospital is not within the exception stated in the proviso, although the hospital also receives without charge certain patients who are unable to pay. Property used in such manner, whether or not the hospital is a charitable institution, is not exempted, and consequently is subject to taxation." All that was said in that decision is applicable to the instant case, and the principles stated impel a decision that under the facts the property here was not exempt from taxation. It is impossible to conceive that the Southern Dental College, a corporation, could carry on an educational institution and on the strength of its corporate business acquire the property in question and pay for it from the earnings of the institution, and not be using the property for "corporate profit or

income." In the circumstances alleged in the petition, while the property was used as a college it was also used for *corporate profit and income,* which latter use brought the case within the proviso inhibiting exemption from taxation. The court erred in overruling the demurrer, and in granting an injunction. Mr. Justice Bell concurs in this dissent.