26703. GILL et al. v. MYRICK.

ARGUED SEPTEMBER 14, 1971—DECIDED OCTOBER 18, 1971—
REHEARING DENIED NOVEMBER 5, 1971.

George C. Kennedy, for appellants.
Claude A. Bray, Jr., Richard T. Bridges, Glover & Davis,

*Welborn B. Davis, Jr.,* for appellee.

GRICE, Justice. The controversy involved here grows out of a secured creditor's quoting a pay-off figure for the amount of its indebtedness.

Litigation began when Melvin E. Myrick filed in the Superior Court of Talbot County a complaint naming as defendants Mrs. Kathleen Gill, Wiley Joe Williams, Jr., Woodbury Banking Company (hereinafter referred to as the Bank) and Meriwether Federal Savings and Loan Association (hereinafter referred to as the Association).

Thereafter the trial court entered a judgment which denied motions of the defendants to dismiss the complaint; temporarily enjoined the defendant Gill from selling the property described in the complaint under power of sale contained in a security deed to her from the defendant Williams and ordered the defendants to interplead and set up their rights in the property described in the complaint and litigate and settle their disputed claims as to their respective rights.

The appeal is by Mrs. Gill and the Bank from that judgment, which was certified for immediate review.

The complaint made, insofar as necessary to recite here, the allegations which follow.

Mrs. Gill is a resident of Talbot County; Williams is a resident of Coweta County; the Bank and the Association are corporations and have their banking offices in Meriwether County; and all of these defendants are subject to the court's jurisdiction.

The plaintiff Myrick owns certain described real property located in Meriwether County.

The plaintiff, on September 29, 1970, entered into a contract whereby the plaintiff was to purchase the property for $19,000, a copy thereof being attached to the complaint.

Subsequently the plaintiff obtained a loan of $16,500 from the Association, a copy of the loan closing statement being attached.

Pursuant to this purchase, plaintiff caused a title examination to be made of the records of Meriwether County,

which disclosed a security deed from Williams to Mrs. Gill dated September 7, 1963, in the original principal amount of $14,500, which was duly recorded and a first lien on the property. This security deed was assigned by Mrs. Gill to the Bank on September 7, 1963, and was duly recorded. The Bank was the apparent owner of this security deed from September 7, 1963, to December 15, 1970, the period during which the transaction alleged in this complaint occurred.

On or about September 29, 1970, the Association by and through a named officer requested of the Bank the pay-off balance on the above mentioned Williams security deed. It also informed the Bank that Williams was selling this property to the plaintiff and that the Association was making a loan thereon to the plaintiff for a portion of the purchase price. The Bank by and through its vice president and cashier then advised the Association that there was a balance due on the aforesaid Williams security deed of $6,601.86.

In reliance on the representation of the Bank, plaintiff purchased this property and executed a security deed to the Association. At the same time he caused to be distributed the proceeds of the purchase money and loan proceeds according to the loan closing statement referred to above, which included a check for $6,601.86 drawn on the Association to the Bank to pay off the Williams security deed. This check was delivered to the Bank on or before October 2, 1970.

Thereupon plaintiff took possession of the property, made improvements thereon, and has made regular monthly payments of $149 on it from November 1, 1970, to the beginning of this action.

Mrs. Gill is now advertising this property for sale under the power contained in the Williams security deed. Plaintiff had no previous knowledge that the Williams security deed remained unpaid and uncanceled of record. When the proposed foreclosure came to plaintiff's attention, he discovered that the Bank had refused the payment of $6,601.86; that it had returned the check therefor to the Association; that

it had advised that Mrs. Gill did not agree with the pay-off amount of the Williams security deed; that the Bank would not accept $6,601.86 in satisfaction of it; and that it would not deliver it up for cancellation.

The Williams security deed was pledged to the Bank as collateral for an indebtedness of an undetermined amount from Mrs. Gill to the Bank which was not apparent from the record and assignment of the Williams security deed, and was not communicated to the plaintiff until about March, 1971. He was not advised that the check had not been cashed until March 18, 1971.

On December 15, 1970, the Bank assigned and transferred the Williams security deed to Mrs. Gill. About March, 1971, she instituted the foreclosure proceedings thereunder and proceeded to advertise the property for sale on the first Tuesday in April, 1971.

Plaintiff at all times alleged herein relied upon the Bank's and the Association's representations as to the amount due in the Williams security deed, closed the loan from the Association and caused the proceeds of the sale, including the loan proceeds, to be distributed according to the loan closing statement referred to above. The plaintiff caused to be paid to Williams $9,898.14 from the proceeds of the Association's loan, together with the sums of $200 and $2,300 representing the balance of the purchase price.

Williams, by the exercise of slight care, should have known that the balance on said security deed exceeded $6,601.86; but notwithstanding such knowledge he accepted the proceeds without informing the plaintiff of the dispute between Mrs. Gill and himself as to the amount of the indebtedness or as to the erroneous pay-off balance on the security deed, thereby defrauding and injuring the plaintiff.

Plaintiff, as alleged, has executed and delivered to the Association a note and security deed conveying the property as security for a debt of $16,500 on which he is now paying monthly instalments of $149.

Mrs. Gill is estopped to assert a claim against the plaintiff on his property for an amount exceeding $6,601.86 be-

cause of his reliance upon the pay-off figure furnished by the Bank when the Bank knew that he would rely on such figure in dealing with Williams and the Association in the aforesaid transaction.

Plaintiff stands ready to do equity by paying $6,601.86 into court. However, a dispute exists between Williams and Mrs. Gill and plaintiff cannot safely tender more than $6,601.86. He will pray that he be relieved from tender in any amount in excess until such amount as may be due Mrs. Gill from Williams has been judicially determined.

Plaintiff stands ready to do equity and will pay the amount due Mrs. Gill. If it is found that an amount exceeding $6,601.86 is due Mrs. Gill, plaintiff prays for judgment against Williams for such amount, or that the court decree that the Bank or the Association be liable to plaintiff for that amount.

The Williams security deed is a cloud on plaintiff's title and should be canceled of record.

Plaintiff is not in collusion with anyone, is a mere stakeholder, has no interest in the disposition of proceeds, and is concerned only with clearing title to the property and with not paying more than once the debt secured by the aforesaid security deed.

Mrs. Gill is fully aware that plaintiff has purchased this property and that he has closed the sale and has distributed the proceeds of the purchase price to Williams on reliance of the Bank, which was then the holder of the Williams security deed. If Mrs. Gill sells the property at the sale now being advertised the purchaser will be a bona fide purchaser for value against whom the plaintiff would have no legal right. Mrs. Gill has advised plaintiff that she will sell the property under the Williams security deed in April, 1971.

Plaintiff has no adequate remedy at law, cannot safely litigate all the issues with each of the defendants separately, and in order to avoid a multiplicity of suits is entitled to an ex parte restraining order restraining Mrs. Gill from selling the property under the power of sale, from disposing

of the security deed and note, or from changing the legal status of title to the property until a temporary hearing.

Plaintiff is entitled to a temporary injunction enjoining Mrs. Gill from changing the legal status of the title to the property and from foreclosing or transferring the security deed and note pending a final judgment; and if he is found not to be liable for any amount exceeding $6,601.86 that a permanent injunction be entered enjoining Mrs. Gill from foreclosing or enforcing the Williams security deed against plaintiff's property.

Plaintiff can only be protected by requiring all defendants to interplead, set up and establish their respective claims and by entering judgment determining what amount, if any, may be due Mrs. Gill and how the same should be divided among the remaining defendants, and providing that upon payment of such judgment plaintiff's property shall be free and clear of the Williams security deed and that it be canceled.

By amendment the complaint alleged that at all times herein set forth Mrs. Gill had full knowledge of all of the foregoing facts, and more particularly, had such notice and knowledge at·the time that the Williams security deed was assigned to her.

The prayers of the complaint, in addition to process, service, restraining order, general relief and attorney fees, are those which follow:

That Mrs. Gill be temporarily enjoined from selling the property under the power of sale in the Williams security deed and from transferring, assigning, or conveying it, or from changing the title to the property in any way.

That the defendants be required to interplead in this action and set up their respective claims, if they have any, in the premises.

That Williams be required to account for the funds that he was bound by the warranty deed to plaintiff to apply to the satisfaction of the security deed to Mrs. Gill, and that if he is not liable therefor or is otherwise unable to pay, that those responsible for causing plaintiff to act in reliance

on the quoted pay-off figure be required to do so.

That any amount found to be a proper claim against plaintiff's property in excess of $6,601.86 be divided among the aforesaid defendants and payment thereof required as the court deems proper.

That the security deed from Williams to Mrs. Gill be canceled of record, or in the alternative that a permanent injunction be entered restraining its holder from enforcing the lien against plaintiff's property or any proceedings against him.

Among the defensive pleadings to the foregoing complaint were the motions to dismiss by the defendants Mrs. Gill and the Bank. Each asserted that the complaint fails to state a claim upon which relief can be granted against that defendant, and that the complaint fails to set forth any facts for which relief sought directly or in the alternative can be granted against that defendant.

■ We conclude that the trial court was correct in denying the motions to dismiss the complaint.

In making this determination, at the outset "we are mindful that with the advent of the adoption of the Civil Practice Act (Ga. L. 1966, p. 609; 1967, p. 226; *Code Ann. Title* 81A) a complaint is not required to set forth a cause of action, but need only set forth a claim for relief, and that a complaint is no longer to be construed most strongly against the pleader. *Code Ann.* § 81A-108 (a). [Citations]. Furthermore, 'A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient.' [Citation]." *Mitchell v. Dickey,* 226 Ga. 218, 220 (173 SE2d 695). See also *Frazier v. Rainey,* 227 Ga. 350, 352 (180 SE2d 725) and citations.

This conclusion accords with several provisions of our law.

As to joinder of parties, the rule is that "equity will en-

tertain a bill of peace . . . To avoid a multiplicity of suits, by establishing a right, in favor of or against several persons, which is likely to be the subject of legal controversy, or in other similar cases." *Code* § 37-1501 (2).

Also, "All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all of them will arise in the action." *Code Ann.* § 81A-120 (a).

However, two interpleader provisions are also applicable here.

The first provides in material part that "Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants . . . The provisions of this section supplement and do not in any way limit the joinder of parties permitted in section 81A-120." *Code Ann.* § 81A-122 (a).

The other interpleader provision recites in material part that "Whenever a person shall be possessed of property or funds, or owe a debt or duty, to which more than one person shall lay claim of such a character as to render it doubtful or dangerous for the holder to act, he may apply to equity to compel the claimants to interplead." *Code Ann.* § 37-1503.

In determining the sufficiency of the plaintiff's claim for interpleader here it should be borne in mind that this does not depend upon whether there is any merit in the claims with which he is confronted.

In *Ins. Co. of North America v. Citizens Bank of Gaines-*

*ville,* 225 Ga. 347, 351 (168 SE2d 578), we quoted from *Code Ann.* § 81A-122 (a), supra, as to interpleader and then referred to the following language in *Algernon Blair, Inc. v. Trust Co. of Ga.,* 224 Ga. 118, 121 (160 SE2d 395). "The right to interpleader under [*Code Ann.* § 81A-122] should depend merely upon the stakeholder's good-faith fear of adverse claims, regardless of the merits of those claims or what the stakeholder bona fide believes the merits to be . . . Indeed, it will normally be the case that the assertions of one or more of the claimants will be lacking in merit, but that fact alone does not relieve the stakeholder of the substantial risk of vexatious litigation. In the very nature of interpleader, where the total claims presented to the stakeholder exceed the amount of the fund, some of the claims will be found either to be lacking in merit or to be subordinate, but the fact that this may appear on the face of the stakeholder's petition should not operate to deny him the relief he seeks, that is, relief from the threat of vexatious multiple litigation . . ."

From the allegations of the complaint, which we have set forth in some detail, it is clear that this transaction falls within the purview of the statutory provisions and decisions on this subject.

From the complaint it appears that the plaintiff's real estate is faced with impending foreclosure and sale. The allegations are sufficient to show a bona fide fear of multiple liability as to both the money and the property.

Likewise, it shows that all four of the defendants—Williams, the Bank, the Association and Mrs. Gill—are involved in the same transaction; that each has had some connection with the title to the property; and that each has been concerned with the pay-off figure, its accuracy or inaccuracy, the responsibility for it, or the effect of it. Many questions are posed, common to all the defendants, which may become litigable. But the plaintiff must sue the four defendants in three different counties unless they are joined in this suit.

In view of the allegations it can not be said that the

plaintiff has not stated a claim for relief which should be disposed of in a single action rather than in multiple litigation.

■ It follows that the trial court correctly ordered these four defendants to set forth their rights to the property and to litigate and settle the disputed claims as to their respective rights.

■ Likewise, the trial court correctly granted a temporary injunction restraining the defendant Mrs. Gill from selling the property and from transferring, assigning, conveying or changing the title to the property. No abuse of discretion appears.

*Judgment affirmed. All the Justices concur, except Felton, J., who dissents.*

FELTON, Justice, dissenting. I am of the opinion that the court erred in overruling the appellants' motion to dismiss the complaint.

It seems to me that our courts sometimes take too quick and unanalytical glances at complaints which should be dismissed because of allegations which *foreclose relief sought.* When the complaint contains such allegations it has to be judged in the appellate court where no amendment has been filed eliminating the allegations which would prevent the relief sought. The case of *Hunter v. A-1 Bonding Service,* 118 Ga. App. 498 (164 SE2d 246) and what happened after this court denied certiorari, should put in bold relief what can happen when the principle above stated is not strictly applied. After this court denied certiorari, the plaintiff in that case amended his complaint by striking the allegation which the dissenting judges thought precluded recovery. That action gave the plaintiff an unconscionable advantage and made possible a recovery which never should have occurred. The plaintiff in this case is not entitled to any relief sought against the appellants. That is all we have in this case for decision on this appeal. There is absolutely nothing upon which a claim against Mrs. Gill can be predicated. She has not been accused of any wrongdoing. She has not been accused of making a mistake. There is no

reason why she should forego her right to foreclose her security deed, especially when she has not been tendered the *full amount* of the balance due her plus interest and attorney's fees, if any, and in the absence of a failure of the plaintiff to tender into court an amount which will satisfy Mrs. Gill's deed to secure debt in full. There is no claim stated against the Bank. All the Bank is charged with is representing to the loan association, which was an agent and representative of the plaintiff in distributing the proceeds of the association's loan to the plaintiff, that the balance due on the Williams security deed to Mrs. Gill was less than the amount in fact due. The harm done, if any, to the plaintiff in this case, was due solely to the negligence of the plaintiff, his attorney and his agent, the loan association, in failing to have in their hands for cancellation the deed from Williams to Mrs. Gill. At the closing of a loan under the circumstances of this case, the parties representing the parties to the loan by the association should have had in their hands for cancellation the security deed from Williams to Mrs. Gill. If any effort had been made to do this simple act, it would have been discovered that Mrs. Gill had not been paid in full and that the association was not justified in gambling on whether it could get the cancellation on its terms or not. The negligence above described, was the sole proximate cause of whatever harm was done the plaintiff. Such negligence would even preclude any fraud alleged against the bank and Mrs. Gill. Authorities for this proposition are too numerous to cite.