26716, 26717. RABUN GAP-NACOOCHEE SCHOOL v. THOMAS et al.; and vice versa.

232

ARGUED SEPTEMBER 14, 1971—DECIDED OCTOBER 21, 1971.

*Knox Bynum, King & Spalding, Charles L. Gowen, A. Felton Jenkins, Jr.,* for appellant.

*V. D. Stockton, McClure, Ramsay & Struble, George B. Ramsay, Jr., Robert B. Struble,* for appellees.

ALMAND, Chief Justice. These appeals are from orders on motions for summary judgments by the appellant and the appellee.

This case involves a question as to whether the real and personal property of Rabun Gap-Nacoochee School, a private educational institution, is subject to ad valorem taxation by Rabun County.

In August, 1970, Rabun Gap-Nacoochee School, hereinafter referred to as "the school," received notice from Hugh W. Thomas, Tax Commissioner of Rabun County, that the tax assessors of Rabun County were assessing a taxation on 1,100 acres and 16 dwelling houses belonging to the school upon a taxable valuation of $71,000. Shortly thereafter, the school received notice that it owed the county for 1970 state, county, and school taxes, the sum of $3,634.43, based upon property having a total value of $87,000. Thereupon, the school filed its equitable complaint against the defendants in which it prayed that all of the school's properties, real and personal, located in Rabun County be decreed to be exempt under the Constitution and laws of this State from ad valorem taxation, in that all of said properties are used by the school as a purely public charitable institution and as an educational institution, and that the defendants be temporarily and permanently enjoined from levying or attempting to levy and collect any tax on any of its properties.

On presentation of the complaint the court granted a temporary injunction.

In their answer, the defendants alleged that the 1,100

acres of land, the 16 dwellings, a dairy barn, and equipment on which the taxes were sought to be levied and collected, were used for the purpose of deriving income, and thereby were not exempt by reason of the school being an educational institution.

The school and the defendants filed their motions for a summary judgment based upon the pleadings, depositions and affidavits of several persons.

On May 29, 1971, the court entered orders in which it made findings and denied the school's motion for a summary judgment and granted in part and denied in part the defendants' motion for a summary judgment and certified both orders for immediate review. Notice of appeal was filed by the school and by the defendants.

The record discloses the following facts. Rabun Gap-Nacoochee School is a non-profit educational institution, incorporated under the laws of Georgia, located in Rabun County. The purpose of the corporation as stated in its charter is: "to educate and train men and women, boys and girls, living in mountain regions and other needy sections; and for such purposes it may build, operate, equip and maintain farm schools for instructing minors or adults in agriculture, economy and good citizenship; vocational schools, graded and high schools; normal and junior colleges for training teachers for mountain schools and conducting community activities; and said corporation proposes generally to educate, instruct and train mountain people under Christian auspices, provided that no person shall be excluded from the institution operated by it on account of belief in or adherence to any particular sect or religion; and for the purposes aforesaid said corporation may build, maintain, operate and equip schools, orphanages, academies, colleges, workshops, dormitories, and any other plants or buildings or institutions whatever reasonably necessary to promote the purposes of its organization. . . That said corporation desires the power, right and privilege, to charge, exact and collect such fees from those residing in its dormitories and orphanages and attending its schools

and other institutions as it may see fit, provided always that the proceeds of such charges and collections shall be used solely for the charitable, educational and eleemosynary objects of said corporation; to enforce good order in its schools, orphanages and other institutions; to issue degrees and diplomas; and generally to do and perform all things in the opinion of said corporation reasonably necessary or proper to be done or performed to carry out the purposes of said corporation." The basic aims and purposes of the school are: (1) to provide deserving boys and girls with secondary education in basic academic subjects such as language, social studies, sciences and literature, and (2) through its student work program to teach boys and girls responsible work habits with academic and Christian interests so that they may develop into productive and responsible citizens. The student work program is designed to teach the student to solve his own problems, to teach him responsible work habits and to teach him to do the job right the first time. Each student is required to spend a minimum of approximately 10 hours a week in the work program in addition to the normal classroom work. At present the school has approximately 86 students, boys and girls in equal number. These students reside in dormitories owned by the school. There was testimony that it costs the school approximately $2,200 per student per year. A student's parents or guardians who are able to pay, pay a tuition of $990 and each student must work and earn between $270 and $790 each year to be applied on his tuition. There was evidence that the average deficit per student is approximately $1,400 and that this deficit is made up from charitable contributions. Charitable contributions represented 42 percent of the total operating expenses for the year 1969-70. The school owns approximately 1,600 acres of land on which it has its college buildings and dormitories, comprising around 160 acres which is conceded by the defendants to be exempt from taxation, the balance of the property being land on which the school operates a dairy, land for pasture and farming purposes, and woodland.

The school also participates in the operation of a high

school which is a part of the Rabun County school system. It rents the building in which classes are conducted by the county board of education for a nominal yearly rental.

■ We consider first the assignments of error in the appeal of the school.

(a) Error is assigned on the court's finding that the lands and buildings used by the school in the operation of the dairy were not exempt from taxation.

The evidence shows that the school operates a dairy barn and has 100 or more cows and that 80 to 85 percent of the milk produced from these cows is sold to a private corporation; that more than 800 acres of its land is used for pasture, growing hay, corn, and silage; that from the sale of milk in one year it received more than $73,000; that it also receives income from the sale of calves; that during the school year 1969-70, approximately 6 percent of the male student body during their stay in school worked in the dairy and an average of six students worked daily in the dairy; and, that for this work, part of their school cost was paid.

The court found that the portion of this property used for dairy purposes was being used to secure income and not for the primary purpose of operating the school and was subject to taxation.

(b) Error is assigned on the court's finding that a craft shop and the land on which the shop is located, were being used for the purpose of receiving income and were subject to taxation.

The evidence discloses that the school operates a craft shop located on its property abutting U. S. Highway 23, in which it sells gifts of handicraft, weaving, and similar items to the public. These articles are produced by persons having no connection with the school. The gross receipts from this operation in 1970 were $18,851.

(c) Error is assigned on the court's finding that land of the school in the Federal Soil Bank Program, from which it received income, was taxable.

The evidence discloses that approximately 200 acres of

the school's land is committed to the Federal Soil Bank Program from which it receives annually approximately $3,000.

(d) Error is assigned on the court's finding that a small tract of land on which the school raises peppers was subject to taxation.

The evidence discloses that from this small tract of land the school raises peppers and sells them to the Campbell Soup Company from which it receives income.

(e) Error is assigned on the court's finding that two dwellings and the land on which they are located are being used for the purposes of receiving income and were taxable.

The record discloses that there are 16 or more dwelling houses located on the school property. House number 4 is rented to a person who has no connection with the school, for which he pays the sum of $40 per month. House number 14 is rented to a person for $30 per month. His connection with the school is that of maintaining a study hall for the students four nights a week.

The school maintains that all of the above enumerated properties are exempt from taxation by reason of *Code Ann.* § 92-201 (enacted pursuant to Art. VIII, Sec. I, Par. IV of the 1945 Constitution, *Code Ann.* § 2-5404) which provides: ". . . all buildings erected for and used as a college, nonprofit hospital, incorporated academy or other seminary of learning, and also all funds or property held or used as endowment by such colleges, nonprofit hospitals, incorporated academies or seminaries of learning, providing the same is not invested in real estate; and provided, further, that said exemptions shall only apply to such colleges, nonprofit hospitals, incorporated academies or other seminaries of learning as are open to the general public . . . provided the property so exempted be not used for the purpose of private or corporate profit and income, distributable to shareholders in corporations owning such property or to other owners of such property, and any income from such property is used exclusively for religious, educational and charitable purposes, or for either one or more of such pur-

poses and for the purpose of maintaining and operating such institutions; this exemption shall not apply to real estate or buildings other than those used for the operation of such institution and which is rented, leased or otherwise used for the primary purpose of securing an income thereon. . ."

Whether or not the school comes within the exemption provisions of the aforementioned Code section depends entirely upon the factual situation of the case. However, what this court has decided in prior decisions construing this section is a guideline for deciding whether the above enumerated properties are subject to taxation.

*Trustees of Academy of Richmond County v. Bohler,* 80 Ga. 159 (7 SE 633), was a case where real estate had been devised to a trustee in the City of Augusta for erection of a poorhouse and the support of its inmates from its income. The trustees asserted that the property was exempt from taxation on the ground that it was used for purely public charity. The trustees received rent from the property. The court there held that the property was not exempt by reason of the fact that it received income. "In the case of a poorhouse, the realty might embrace, besides the land covered with the necessary buildings, grounds for recreation, exercise, for pasture of the animals, and even a farm for the inmates to cultivate. The establishment, as a whole, might embrace all these, with articles of personalty to any needful extent for supplying the inmates with all the comforts of life, and keeping them in a healthy, virtuous, cheerful and contented state of existence. We doubt not the entire establishment, however extensive or composite, would be exempt from taxation if used directly and solely for public charity, and not as a source of profit or income. . . The property, therefore, would not be used for profit or income in the same sense as if it were farmed or rented out; and not used at all by the inmates, but by others paying for its use as productive capital. The scheme of exemption as to other than public property seems to be this: to exempt all that is used immediately and directly as a part of the es-

tablishment in the conduct of the regular business there carried on, but not such as may be devoted to other uses, such as farming, merchandising, manufacturing, etc., and from which profit or income is derived. It is the use of the property which renders it exempt or non-exempt, not the use of the income derived from it. Cincinnati College v. State, 19 Ohio 110; Library v. Pelton, 36 Ohio St. 258; New Orleans v. St. Patrick's Hall, 28 La. An. 212; Detroit v. Mayor, 3 Mich. 172; State v. Elizabeth, 4 Dutcher 103. Property used to produce income to be expended in charity is too remote from the ultimate charitable object to be exempt. If property is allowed to be used as taxed property, it also is to be taxed. If it competes, in the common business and occupations of life, with the property of other owners, it must bear the tax which theirs bears. Thus, if even a synagogue or a church were rented out during the week for a storeroom or a shop, though divine service might be performed in it on Saturday or Sunday, and though the rents were all appropriated to religious or charitable uses, its exemption would be lost."

In *Massenburg v. Grand Lodge F. & A. M. of the State of Georgia*, 81 Ga. 212 (7 SE 636), a Masonic lodge owned a two-story building. It rented the lower floor and applied the rent exclusively to charitable uses. It was held that, conceding the lodge was an institution of purely public charity within the meaning of the Constitution, where it used the building for corporate profit or income it was not exempt from taxation. "We arrive at the conclusion that the property itself, claimed to be exempt, must be used directly and immediately for the charitable object, not from any express declaration to that effect in the Constitution or the statute, for there is none, but from the negative contained in the proviso upon use for private or corporate profit or income. Interpreting 'private or corporate income' to mean any income which is not public, we consider that productive property used as capital to raise money to expend in charity is used for private income when the owner is a private individual, and for corporate income when the owner is a corpo-

ration. It is no more allowable, under the Constitution, for a charitable association to accumulate money by the use of exempt property to be disbursed in charity than it is for a common citizen to do it. . . When the two functions co-operate in the use of the same property or of different parts of the same building, as in this case, the strict letter of the Constitution would deny exemption to the whole; for the language is, 'Provided, the property so exempted be not used for purposes of private or corporate profit or income.' Wyman v. St. Louis, 17 Mo. 335. But the general tenor of authority seems to be that in such instances, though the property is taxable, there may be a due apportionment of values in the assessment, so as to confine the exemption to so much of the value as the privileged part of the premises represents. . . The acquiring of money by the use of property or capital is not the appropriate office of a charitable agency, but rather to apply and administer that which has been accumulated through its own bounty or the bounty of others. It is not an instrumentality for gathering together, but for scattering abroad. When charity has a business side, let it conduct business as the world generally, on business principles, the first rule of which is to provide for taxes the highest claim on every species of property employed in the common avocations of life. There appears to us no reason why stores belonging to the grand lodge, rented out by it to merchants or shop-keepers, and thus put in competition with other like realty in the City of Macon, should not be taxed, irrespective of whether the 'lodge' of the order is in the same building, and whether the proceeds of the renting have been or are to be applied to one purpose or another." For a similar ruling see *Atlanta Masonic Temple Co. v. City of Atlanta,* 162 Ga. 244 (133 SE 864).

The case of *Mundy v. Van House,* 104 Ga. 292 (80 SE 783), holds that buildings erected for and used as a college, academy, or other seminary of learning are not exempt from taxation, if such property be used for purposes of private or corporate profit or income. "In the present case it appears that the defendants in error are the owners of the

property claimed to be exempt; that they are using this property in conducting a school or college for the education of girls; that they furnish to the girls their caps and uniforms, which are paid for; that they frequently give entertainments, for some of which admission fees are charged; that they board the pupils of the school for a given price each, and also charge each pupil a tuition fee. These charges are arbitrarily fixed, without any reference whatever to the actual cost of conducting the school, and must be held, to all intents and purposes, to afford a source, if not of private profit, certainly of income to the owners. They are competing with other property in the State in the matter of deriving income; and therefore their property must bear its proportion of the burdens of taxation."

In *Church of God of the Union Assembly v. City of Dalton,* 213 Ga. 76 (97 SE2d 132), a non-profit religious organization sought to enjoin the City of Dalton from assessing and collecting taxes on its real estate which it alleged was being used exclusively for religious purposes. As against a general demurrer this court held that the petition stated a cause of action. But, on the trial of the case (216 Ga. 659 (119 SE2d 11)), where it appeared that the church rented a portion of its property from which it received an income, this court held that such part of its property that it rented was not exempt from taxation.

It is the use to which the property of an educational institution is put, rather than the declaration of the purpose of the institution found in its charter, that determines the question of exemption from taxation. *Mu Beta Chapter Chi Omega House Corp. v. Davison,* 192 Ga. 124 (14 SE2d 744).

The case of *Baggett v. Georgia Conference Association of Seventh Day Adventists,* 157 Ga. 488 (121 SE 838) (two Justices dissenting), is distinguishable on its facts from the instant case. In that case a religious corporation in connection with a school for boys owned about 50 acres of land. Part of its curriculum in the higher grades of the academy was courses in agriculture. Every pupil was required to work two days each week on the farm and all of the pro-

duce from the farm was applied to the feeding of the students, and it further appeared that the school received no income or profit as such for its own use.

From the foregoing we conclude that the court did not err in its findings on which errors are enumerated in the main appeal.

■ We consider next the appeal of the defendants.

(a) Error is assigned on the findings by the court that the school was "an institution of purely public charity," as well as "a seminary of learning." In the case of *Presbyterian Center, Inc. v. Henson*, 221 Ga. 750 (146 SE2d 903), the plaintiff sought to enjoin the taxing authorities from levying or collecting any taxes on its real property. It was a non-profit religious corporation that owned certain described real estate in the City of Atlanta on which was located the headquarters of the Presbyterian Church in the United States. It had no income except that which came from the church agencies and offices "as their proportionate share of maintenance and operation expense of the property, such as insurance, repairs, utilities, and janitorial service." It sought to claim an exemption from taxation on the ground that it was an institution of purely public charity. In rejecting this claim, this court said (p. 753): "Although religious institutions are, for some purposes, considered to be matters of charity, they are not necessarily considered such for all purposes. Even the word 'charity' itself is given a narrower meaning in tax exemption cases. See *United Hospitals Assn. v. Fulton County*, 216 Ga. 30, 33 (114 SE2d 524).

"In order to determine whether religious institutions are charitable institutions for the purpose of exemption from taxation under the Constitution (Art. VII, Sec. I, Par. IV, supra) and the statute pursuant thereto (Ga. L. 1946, p. 12, as amended, supra) we must examine the exemption language in the light of applicable rules of construction.

"First, we consider the intention of the drafters of the Constitution. The Proceedings of the Constitutional Commission of 1945 give no indication of their intent as to this. However, since the exemption provision, supra, exempts

certain specified property owned by religious groups, and then broadly exempts 'all institutions of purely public charity,' it appears that it was not intended that religious groups or institutions be considered charitable institutions for the purpose of this exemption.

"Application of the construction maxim that the enumeration of particular things excludes something not mentioned (expressio unius est exclusio alterius) leads to the same conclusion, as does the rule that all exemptions from taxation must be strictly construed in favor of the taxing authorities and against the taxpayer." To paraphrase the ruling there made to the instant case, the exemption in *Code Ann.* § 92-201 exempts certain specified property owned by a seminary of learning and then exempts "all institutions of purely public charity." It appears that it was the intention of the drafters of the Constitution that a seminary of learning be not considered as a charitable institution for the purpose of this exemption.

The fact that an institution serves a benevolent purpose does not necessarily make it a "purely public charity." *United Hospitals Service Assn. v. Fulton County,* 216 Ga. 30, supra. See also *Trustees of the Academy of Richmond County, v. Bohler,* 80 Ga. 159, supra.

The finding by the court that the school was an institution of "purely public charity" was erroneous.

(b) Error is assigned upon the court's finding that all of the school's personal property was exempt from taxation. Appellee asserts that the equipment and farm machinery used in the operation of the dairy were subject to taxation.

In view of our ruling in Division 1 (a) of this opinion, such equipment and farm machinery used in the operation of the dairy would be subject to taxation. On the trial of the case, it would be a question for the jury to determine the specific articles, equipment and machinery, that were subject to taxation.

(c) Error is claimed by the appellee on the finding by the court that 14 dwellings owned by the school are used primarily and exclusively for the purpose of the operation of

the school and were exempt from taxation, or in the alternative such question as to those 14 dwellings should be left to the jury's determination.

In dealing with these dwellings we refer to the number given them in the affidavit of Jack M. Smoot, business manager of the school.

House No. 1 is occupied by one who is using the house and approximately 75 acres of land surrounding it as a part of the Farm Family Program. "The purpose of the Farm Family Program is to bring an indigent mountain farm family on the school property and furnish the family with a home and enough land to farm and to teach that family proper farm management so that at the conclusion of their stay on school property, the family will be qualified to operate its own farm or at least will be well trained enough to secure farm employment. The Farm Family Program is a purely charitable endeavor sponsored by the school in an effort to help poor mountain families. The school receives no income whatsoever from this program. At the present time, the 75 acres in the Farm Family Program is being used by Mr. Elcaney Jenkins and his family. Mr. Jenkins pays no rent, but rather is afforded the use of the land to support his family. He has a small dairy operation and milks 22 cows. He receives training and instruction from the school's farm manager, Mr. Pope Bass, in proper methods of dairy operation and other farming practices."

House No. 2 is occupied by a man and his wife who chaperones and supervises the students at various school functions.

House No. 3 is the residence of a full-time assistant dairyman.

House No. 5 is occupied by one whose duty is to maintain in good order the school's buildings and educational equipment.

House No. 6 is occupied by one who is in charge of the school's water system and its mechanical and electrical problems. The family has students in their home, known as the Campus Family, and has for its purpose keeping stu-

dents from becoming homesick.

House No. 7 is occupied by one who teaches shop in the school and works on maintenance jobs or supervises the study hall.

House No. 8 is occupied by one who helps with farm operations.

House No. 9 is occupied by one who teaches vocational agriculture at school and counsels students.

House No. 10 is the residence of one who is in charge of the campus grounds, forestry operation, and supervises students in the student work program.

House No. 11 is occupied by one who does maintenance work for the school.

House No. 12 is the residence of one who works with the dairy and his duties are to watch over and feed the cattle.

House No. 13 is occupied by one who is assistant to the president of the school.

House No. 16 is occupied by a minister who teaches Bible in the school and is a student counselor.

House No. 17 is occupied by the dean of students.

House No. 18 is occupied by the farm manager who is in charge of the farm dairy operation.

House No. 19 is occupied by a man and his wife who teach in the school.

House No. 20 is occupied by the president of the school.

House No. 27 is occupied by the vice president of the school.

House No. 28 is occupied by one who is a maintenance man and available for emergency calls.

None of the occupants of the above enumerated dwellings pay any rent to the school.

The employee-occupants of these dwellings may be divided into three classes. (1) Those who are employed to teach or assist in the educational program of the school. (2) Those employed to maintain and operate the school's physical properties. (3) Those whose duties as employees of the school are to operate the dairy and dairy farm land.

In *Elder v. Trustees of Atlanta University,* 194 Ga. 716 (2)

(22 SE2d 515, 143 ALR 268), this court held: "Dwelling-houses are owned by an educational institution, located immediately across the street from its main campus, occupied, in accordance with the purpose for which they were erected, as residences by members of the faculty, with no rent paid, although the occupancy of said residences is taken into consideration in determining the salaries of the professors living there, it being a part of the duty of those members of the faculty who occupy said residences to exercise supervision and control of the deportment of the students, and said residences often being used by the students for conferences with faculty members who occupy them. Such dwellings are comprehended within the meaning of the phrase, 'all buildings erected for and used as a college,' as the same is employed in Article VII, Section II, Paragraph II, of the Constitution of this State (Code of 1933, § 2-5002), and are thereby rendered exempt from taxation under the Code, § 92-201." See also *Flint Electric Membership Corp. v. Adams,* 214 Ga. 280 (104 SE2d 431).

As to Class 1 (dwellings used by faculty members, or those who assist in the educational functions of the school), under the ruling in the *Elder* case, supra, the court correctly found that Houses Nos. 2, 7, 9, 13, 16, 17, 19, 20 and 27 were exempt from taxation.

As to Class 2 (those who maintain and operate the physical properties of the school), the exemption provisions of *Code Ann.* § 92-201 provide for the exemption of "all buildings erected for and used as a . . . incorporated academy or other seminary of learning."

This court, in *Mayor &c. of Gainesville, v. Brenau College,* 150 Ga. 156 (103 SE 164), construed the word "buildings" "to embrace the land upon which they are located and the land adjacent thereto necessary for their proper use, occupancy, and enjoyment, provided of course 'the property be not used for purposes of private or corporate profit or income.'" In *Elder v. Trustees of Atlanta University,* supra, the court construed the word "buildings" to include dwellings or residences of faculty members living on the campus

"to exercise supervision and control of the deportment of the students," and "used by the students for conferences with faculty members."

We will not further extend the word "buildings" to include dwellings on the school's property occupied by employees of the school whose connection with the school is the maintaining and operating the physical properties of the school. Houses Nos. 5, 6, 8, 10, 11 and 28 being the residences of such employees are not exempt from taxation.

As to Class 3 (dwellings occupied by employees of the school in operation of its dairy and dairy farm), the record shows that the employees of the school who reside in Houses Nos. 1, 3, 12 and 18 operate the dairy and dairy farm in connection with the production and sale of milk and under our ruling in Division 1 (a) of this opinion, the court erred in its findings that these dwellings and lands connected therewith were exempt from taxation.

*Judgment affirmed as to the appeal of the school (# 26716); affirmed in part and reversed in part as to the appeal of the defendants (#26717). All the Justices concur.*