26935. JOHNSON et al. v. WORMSLOE FOUNDATION, INC.

ARGUED JANUARY 10, 1972—DECIDED FEBRUARY 28, 1972—
REHEARING DENIED MARCH 9, 1972.

*Anton F. Solms, Jr., E. H. Gadsden,* for appellants.

*Corish, Smith, Remler & Moore, Julian F. Corish,* for appellee.

PER CURIAM. The issue here is whether a tract of land owned by a foundation is exempt from ad valorem taxation as property dedicated to and used exclusively for purely public charity.

For prior appearance of this litigation see *Griffin v. Wormsloe Foundation, Inc.,* 226 Ga. 749 (177 SE2d 481), transferring the appeal to the Court of Appeals, and 123 Ga. App. 765 (182 SE2d 319), holding that an affidavit of illegality is not an available remedy to contest an exemption from taxes. All of the documentary evidence from the first trial was by consent ordered to be made a part of the record in this case since the issues are the same.

The action now on appeal arose when the appellee Wormsloe Foundation, Inc. filed a complaint in equity in the Superior Court of Chatham County praying for temporary and permanent injunction to prohibit the defendants, J. A. Johnson, as Tax Commissioner of Chatham County, C. M. Peagler, as Chief Tax Assessor, and Carl A. Griffin, as Sheriff, from further assessing, levying or otherwise attempting to collect State and county ad valorem taxes against two parcels of land in Chatham County known as Lots A and B of Wormsloe Plantation, and requesting cancellation of certain tax executions against those parcels.

The complaint alleged in pertinent part as follows: that the appellee Foundation is a purely public charitable organization under the laws of Georgia; that Parcels A and B, together with the adjacent marshlands, have been used exclusively and continuously since 1962 for the benefit of educational and charitable institutions; that they have never been used for any other purpose since that time; and that they are therefore exempt from taxation under the provisions of Art. VII, Sec. I, Par. IV of the Georgia Constitution (*Code Ann.* § 2-5404), and also under *Code Ann.* § 92-201.

The complaint further alleged that certain assessments were made for the year 1965 and each year subsequent

thereto through 1968, the date the property was levied upon by the appellants; that the Foundation has protested such assessments on the ground that the property in question was used exclusively for charitable purposes and was exempt from ad valorem taxes under the Constitution and statutes of Georgia; that for the above reasons said taxes are excessive and illegal; and that the Foundation has exhausted its administrative remedies and has no adequate remedy at law.

The appellants filed an answer denying the essential allegations of the complaint.

Upon the action coming on for hearing on the prayer for temporary injunction, the trial court denied the appellants' oral motion to dismiss the complaint and granted the appellee's prayer for temporary injunction.

Subsequently the appellee Foundation filed a motion for summary judgment upon the ground that there was no genuine issue as to any material fact and that it was entitled to a judgment as a matter of law, as appeared from the pleadings and from certain affidavits and other documents to be referred to hereinafter, all of which were attached and made a part of the motion.

In opposition to this motion the appellants submitted an affidavit, a deposition and certain documents.

Upon consideration of this motion the trial court entered an order granting the summary judgment. In doing so it made the following findings of fact: that the Foundation is a purely public charitable organization under the laws of Georgia; that the property alleged to be tax exempt comprises a large part of Wormsloe Plantation and has been used exclusively since 1962 for purely public charitable purposes; and that this property constitutes an historical site, containing a fort erected as a defense against the Spaniards, and other historical features.

The trial court made two conclusions of law, to wit: (1) that the Foundation is a purely public charity within the meaning of the laws of Georgia; and (2) that the property it alleged to be tax exempt had been "dedicated to, and used

exclusively since 1962 for purely public, charitable purposes within the meaning of the laws of Georgia. [Cits.]"

Pursuant to the foregoing the appellants were permanently enjoined from assessing, levying or otherwise attempting to collect ad valorem taxes on the property involved and the tax executions for the years 1965, 1966, 1967 and 1968 were ordered canceled.

The appellants appealed from this order, contending that the court erred in (1) overruling its oral motion to dismiss the complaint upon the grounds that it fails to allege a dedication of the property to public and charitable purposes and also that it fails to state a claim for equitable relief from taxation; and (2) in granting the Foundation's motion for summary judgment.

■ The motion to dismiss was properly denied.

The complaint alleged in essence that the property in question has been used exclusively and continuously since 1962 for the benefit of charitable institutions; that it is exempt from taxation by virtue of stated constitutional and statutory provisions; that the property has been levied upon for taxes; that said levy is illegal; and that the plaintiff has no adequate remedy at law.

The allegations of the complaint are sufficient to withstand the motion to dismiss in view of the Civil Practice Act (*Code Ann.* § 81A-108 (a)). No longer must a cause of action be alleged. The allegations are not to be construed most strongly against the pleader. The complaint gave notice of the nature of the claim. See in this connection, *Gill v. Myrick,* 228 Ga. 253 (1) (185 SE2d 72).

■ We come now to the substantial question, whether the trial court properly granted the motion for summary judgment upon the ground that the property was exempt as purely public charity.

To begin with, Art. VII, Sec. I, Par. IV (*Code Ann.* § 2-5404) of the Georgia Constitution provides in material part as follows:

"The General Assembly may, by law, exempt from taxation . . . all institutions of purely public charity . . . this

exemption shall not apply to real estate or buildings other than those used for the operation of such institution and which is rented, leased or otherwise used for the primary purpose of securing an income thereon; and also provided that such donations of property shall not be predicated upon an agreement, contract or otherwise that the donors shall receive or retain any part of the net or gross income of the property."

Pursuant to the aforesaid authority, the General Assembly has also provided that "all institutions of purely public charity" are exempt from taxation. *Code Ann.* § 92-201.

However, to qualify for ad valorem tax exemption as an "institution of purely public charity" the property itself must be dedicated to a purely public charitable use. *Tharpe v. Central Ga. Council, BSA,* 185 Ga. 810 (196 SE 762, 116 ALR 373); *United Hospitals Service Assn. v. Fulton County,* 216 Ga. 30 (114 SE2d 524).

Wormsloe Foundation, Inc. claims certain of its property qualifies as such by implication.

"Dedications of lands for charitable and religious purposes, and for public highways, are valid without any grantee to hold the fee, and the principle upon which they are sustained, sustains dedications of streets, squares and commons . . . When lands are dedicated and are enjoyed as such, and rights are required [acquired?] by individuals in reference to such dedication, the law considers it in the nature of an estoppel in pais, which precludes the original owner from revoking it." *Mayor &c. of Macon v. Franklin,* 12 Ga. 239, 244.

" 'Whether express or implied, an intention on the part of the owner to dedicate his property to the public use must be shown . . . When an implied dedication is claimed, the facts relied on must be such as to clearly indicate a purpose on the part of the owner to abandon his personal dominion over the property and to devote it to a definite public use.' *Dunaway v. Windsor,* 197 Ga. 705, 707 (30 SE2d 627) . . . 'The mere use of one's property by a small portion of the public, even for an extended period of time, will not amount to a dedication of the property to a public use, un-

less it appears clearly that there was an intention to dedicate . . . ' (*Healey v. City of Atlanta*, 125 Ga. 736, 738 (54 SE 749)), and that this dedication was accepted by the public by public use. *Chatham Motorcycle Club v. Blount*, 214 Ga. 770 (1) [107 SE2d 806]." *Nelson v. Girard*, 215 Ga. 518 (2) (11 SE2d 60).

We are unable to find an implied dedication to a public charitable use from the evidence pertinent to this issue which shows: the property involved consists of 750 acres, the Dean of the Department of Biology of Armstrong State College operated 300 traps for wildlife studies on the property from 1964-1967 and 60 traps since then, that he is also currently conducting bird population studies, and the classes of the School of Environmental Design of the University of Georgia consisting of as many as 60 students visit the property as often as three times a year and sometimes stay as long as three days.

Furthermore, the evidence shows that anyone desiring to enter the property must obtain the permission of the plaintiff and make an appointment. In our view this completely refutes any finding of an implied dedication.

Also, the crucial language to be interpreted in this constitutional and statutory exemption is "used for the operation of such institution."

This record discloses that Wormsloe Foundation, Inc. is not using the subject property itself for the operation of activities carried on by Wormsloe Foundation, Inc. Wormsloe Foundation, Inc. is merely making the property available to the University System of Georgia and to Emory University. And the activities of those institutions carried on on the property are rather minimal.

We interpret this crucial constitutional and statutory language to mean that the charitable institution itself must be carrying on an operation on its real estate for the benefit of the public or for some other legitimate charitable purpose. Merely making real estate available to other public or charitable institutions for their use is not sufficient to qualify for the tax exemption.

It is rather plain that a charitable institution can not be allowed to qualify its real estate for tax exemption, especially such a vast acreage as is involved in this case, by such a thin legal thread as has been shown in this motion for summary judgment.

It cannot be successfully maintained that the pleadings, depositions and other documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Code Ann.* § 81A-156 (c).

Furthermore, it should be kept in mind that claims for exemption from taxation should generally be construed in favor of the State and against the taxpayers. See *Fulton County Federal Savings &c. Assn. v. Simmons,* 210 Ga. 621 (82 SE2d 16).

We therefore hold that the trial court erred in granting the motion for summary judgment upon the ground that the property here was used exclusively for purely public charity and was thus exempt from ad valorem taxation.

*Judgment affirmed in part; reversed in part. All the Justices concur, except Grice, J., who dissents from Division 2.*

GRICE, Justice, dissenting. I do not agree with the conclusion reached by the majority in Division 2 of the opinion, and would affirm the judgment of the trial court.

I agree that the test in determining whether property is exempt from taxation as purely public charity is the *use* to which it is put. In applying this test, however, the court must "consider the *entire evidence* on that subject in order to ascertain whether the claim of exemption is well founded." *Mu Beta Chapter Chi Omega House Corp. v. Davison,* 192 Ga. 124, 126 (14 SE2d 744). (Emphasis supplied).

In my view, that the land involved here is and has been used for purely charitable purposes within the meaning of Georgia law is manifest from the documents supporting the motion for summary judgment. I refer to some of their salient features.

In this regard, the charter of Wormsloe Foundation, Inc. provides that "The objects and purposes of this Foundation

are the promotion of historical research; the restoration, preservation and maintenance of historical sites and documents and the conduct of an educational program in the study of history in the state of Georgia . . ."

The undisputed evidence shows the historical nature of the land in question as well as the educational use to which it is being put. In such a situation, if the Foundation has the right to preserve and maintain a historical site it may authorize whatever it considers a proper use for the land so long as such purposes are consistent with the maintenance and preservation thereof and are charitable.

An affidavit of the Head of the Biology Department at Armstrong State College stated in essential part that he was aware of the historical and ecological nature of the property owned by the Foundation and in 1960 he negotiated with it; that through its generosity the College received a grant for the purpose of conducting an ecological study on Parcels A and B of that property; this work was enlarged and that more intensive studies began in 1963; that the work was further expanded and the grants continued from year to year since then; that the work now includes vegetative aspects and mammalian populations as well as studies of the bird populations; and that it is necessary that there be no interference with the primeval nature of these woods and forests.

He further swore that he is now supervising a winter bird population study and a spring breeding bird population study, which are among the longest continued studies of this nature ever conducted in North America; that these studies have been published in national periodicals; that in addition to these studies the Biology Department at the College has extensively used this property for actual field teaching in courses in ecology and taxonomic botany; and that these studies parallel the other field studies as well as the landscape and architectural work which is being conducted by other teaching units of the University System of Georgia.

He also stated that there are no other activities on these

parcels except the ones conducted by his department, the University of Georgia Department of Environmental Design and the Institute of Liberal Arts of Emory University; that if this property were put to any other use his entire work would be useless; and that the three schools involved understand that they have the right to use this property, the only limitation being that each school correlate its activities so as not to interfere with the work of the others.

The Dean of the School of Environmental Design at the University of Georgia swore in an affidavit that the landscape architecture program of the University is administered there at both the bachelor and master levels; that since 1962 a field trip to the historical lands belonging to the Foundation has been a requirement for graduation in landscape architecture in order for the students to review its history, observe and study its landscape and architectural features and to make a written report thereof; that on this field trip the students can see more elements with which the professional landscape architect has to deal than at any other place available in coastal Georgia; that this provides a very valuable object lesson and aesthetic experience, and deeply influences these students in their future careers; and that the University understands that this property is and will continue to be available to it for the foregoing purposes and use.

There was also an affidavit from the Director of the Liberal Arts Institute of Emory University regarding the activities carried on by that school on the Foundation property. However, these activities did not begin until 1969 and are therefore not pertinent to the tax question involved here.

The Secretary and Treasurer of the Foundation made an affidavit which recited that in all the years involved here he has held that office. He reiterated the essential facts sworn to by the above affiants as to the use of the property and further stated that he is in charge of the real estate owned by the Foundation and is thoroughly familiar with all uses to which these lands have been put; that since 1962 all of Parcels A and B have been used exclusively for

educational, archeological, ecological and historical research and have never been used to produce profit for the Foundation or for any other firm, person or corporation, with the possible exception that certain churches have been given permission to conduct tours thereon for which they have charged "fees," all of which inured to the benefit of the churches, none to the Foundation.

There is nothing in contradiction of these facts, either in the deposition taken of the Foundation's Secretary and Treasurer or in the affidavit of the attorney of the appellants.

There is no evidence of any kind as to any use of the property in question other than that above set out, which clearly is charitable.

From the evidence it is also apparent that no income of any kind has ever been received by the Foundation. This fact distinguishes the instant case from the line of decisions of this court represented by *Rabun Gap-Nacoochee School v. Thomas,* 228 Ga. 231 (184 SE2d 824).

The situation here also differs from that in *Camp v. Fulton County Medical Society,* 219 Ga. 602, 606 (135 SE2d 277) (two Justices dissenting).

In that case, the decision turned upon the ruling that "It is true that the advancement of the knowledge and skill of the medical profession will inure to the benefit of the public served by the profession, but such advancement will also benefit the members of the [Medical Society]. It therefore can not be said that the building of the petitioner is used for 'purely public charity.'"

In the instant case there are no "members" of the Wormsloe Foundation who could conceivably be held to benefit from the uses to which its property is being put, other than as members of the public at large.

Here the evidence clearly showed, without conflict, that this property has been dedicated for charitable purposes. Moreover, no evidence was introduced to show otherwise.

By the terms of its charter, no part of this property can ever inure to the benefit of *any* individual. It provides that in the event of the dissolution of the Foundation its funds

and property *must* be distributed to other "exempt organizations" under the direction of the Senior Judge of the Superior Court of Chatham County, with preference being given to the University of Georgia.

Moreover, there is no evidence of any kind that the Foundation has ever charged or received any income in return for allowing its property to be used.

The majority opinion holds, however, that if the general public is required to obtain permission to enter, these lands are not tax-exempt even though they are used for charitable purposes.

I do not agree.

It is clearly shown by the affidavits of the two university officials that the Foundation finances the studies carried on there and that the general public could not be admitted at all times onto the property without interrupting and destroying these studies.

Moreover, the deposition of the Foundation's Secretary and Treasurer, the only testimony offered on public admission, recited in regard to this: that he is in charge of the Foundation's property; that no admission is charged for its use; that it has never been closed to anyone who asked for an appointment to use it; that "There are any number of people that use it all the time"; that it is "open to the public, but subject to certain conditions [imposed] by the institutions that are using it"; that anyone is welcome to use these lands and the Foundation has never refused permission to anyone to use them; and that "any time any group comes to town they want to come out there and they do. I mean it hasn't been closed to anybody."

The affidavit of the appellants' counsel contains no facts to refute this testimony regarding the use of this land by the public.

It is therefore obvious that under the evidence the property involved here has been dedicated to charity and has been used exclusively as an institution of "purely public charity." See *Tharpe v. Central Ga. Council, BSA,* 185 Ga. 810, (196 SE 762).

In my view, under the foregoing facts, the motion for summary judgment in favor of the Foundation was properly granted.